Kenneth PARHAM, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee,
at Jackson.

May 25, 1994.

Permission to Appeal Denied by
Supreme Court Sept. 12, 1994.

Walker Gwinn, Asst. Public Defender (Appeal Only), Melvin G. Turner, Asst. Public Defender, Memphis (Trial Only), for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Clinton J. Morgan, Asst. Atty. Gen.,

Nashville, John W. Pierotti, Dist. Atty. Gen., Kenneth R. Roach, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

JONES, Judge.

The appellant, Kenneth Parham, appeals as of right from a judgment of the trial court denying his suit for post-conviction relief. The trial court found that the appellant voluntarily, knowingly and intelligently entered a plea of guilty to the offense of murder in the perpetration of a robbery in exchange for a life sentence. In this Court, the appellant contends that his "guilty plea should be set aside because it was not voluntary."

The judgment of the trial court is affirmed.

On the 24th day of May, 1985, the Shelby County Grand Jury returned a two count indictment against the appellant, Tony La-Salle Jones, and Arthur Freddie Taylor. The indictment charged the co-defendants with the murder of Frank Radford. The first count charged the co-defendants with murder in the perpetration of a robbery. The second count of the indictment charged them with premeditated murder.

Taylor, who was not inside the liquor store when Radford was murdered, was permitted to plead guilty. He was sentenced pursuant to a plea bargain agreement. The assistant district attorney general would not make the same offer to Jones and the appellant. However, the state agreed to recommend a life sentence if Jones and the appellant entered pleas of guilty. The life offer was contingent upon both accepting the offer and pleading guilty. Jones wanted to plead guilty. The appellant wanted a trial. Consequently, Jones could not plead guilty.

Jones and the appellant went to trial. The state sought a death sentence for both defendants. On the fifth day of trial Jones and Parham advised the trial court that they wanted to plead guilty to murder in the perpetration of a robbery in exchange for a life sentence. The announcement was made shortly before the state was to rests its case. Jones and the appellant changed their respective pleas, entered pleas of guilty, and they were sentenced to life in the Department of Correction pursuant to the plea bargain agreement.

The appellant subsequently filed this suit for post-conviction relief. He alleged in his petition that trial counsel "coerced" him to plead guilty. The petition states: "[The attorney] further pressured petitioner into an involuntary entering [of] a plea of guilty by advising petitioner that he should enter a plea of guilty in order to avoid the death penalty and possible electrocution of his co-defendants." The appellant also alleged that he was denied the effective assistance of counsel guaranteed by the United States and Tennessee Constitutions in other respects. However, he knowingly and intentionally waived the latter grounds.[1]

The trial court conducted an evidentiary hearing. The transcript of the hearing reflects that the appellant and Jones entered a liquor store. The appellant was armed with a handgun. While inside the liquor store, the appellant gave Jones the pistol. It was cocked and ready to fire when Jones received the pistol. Jones subsequently shot Radford. He died as a direct and proximate result of the gunshot wound.

The appellant gave law enforcement officers a statement. He admitted his participation in the robbery-murder. The appellant's girl friend testified the appellant gave her a ring that belonged to the victim. An attempt was made to take money from the cash register. A mutual friend testified that he, the appellant, and Jones drank liquor following the robbery-murder. It was the same brand of liquor that was stolen from the store.

There was a factual dispute as to who shot the victim. The attorney representing the appellant attempted to establish that Jones shot the victim. The attorney representing Jones attempted to establish that the appellant shot the victim.

---

1. The appellant stated that he did not want to pursue these grounds while testifying at the evidentiary hearing.

Counsel advised the appellant that his chances of being convicted of first degree murder were excellent. The appellant did not have a defense or witnesses who could testify in his behalf. Counsel further advised the appellant that the jury may sentence him to life or death, but the least punishment he could expect was life in the Department of Correction. However, it was almost a foregone conclusion that Jones would receive a death sentence.

The appellant testified that he had talked with Jones's family regarding the entry of a guilty plea. His attorney did not arrange these telephone conversations. During the trial, the appellant and Jones met privately. Jones did not want to risk being sentenced to death. The appellant testified during the evidentiary hearing that he changed his plea to prevent Jones from receiving a death sentence.

The appellant's "coercion" theory has two prongs. The first prong was the assistant district attorney general's refusal to sever Jones so that the appellant could go to trial; and the assistant making the offer of life contingent upon both the appellant and Jones entering pleas of guilty and accepting the offer. The second prong was trial counsel's statement that the appellant would be convicted of first degree murder based upon the evidence adduced during the trial, that the least punishment the appellant would receive was life although there was a strong likelihood he would receive a death sentence, and that it was a foregone conclusion that Jones would receive a death sentence if both did not plead guilty.

The attorney who represented the appellant had a wealth of criminal trial experience. He was acutely aware of the parameters in death penalty litigation. During the evidentiary hearing, he testified that the state's case against the appellant and Jones had been "flawless." He did not have a defense or witnesses to present in the appellant's behalf. Based on the evidence and his wealth of experience as a criminal defense lawyer, the attorney advised the appellant that he was in jeopardy of receiving a death sentence. Counsel was convinced that the jury would find the appellant guilty of first

degree murder. He further advised that the least punishment the appellant would receive was life in the Department of Correction. He also told the appellant that Jones, as the triggerman, would receive a death sentence.

The attorney admitted that he attempted to persuade the appellant to change his plea and accept the life sentence. He thought that this was in the appellant's best interest. However, the attorney told the appellant that he, the appellant, had to decide whether to plead guilty and accept a life sentence. He further told the appellant that he, as his attorney, could not make the decision for him. The transcript of the submission hearing supports the attorney's assertion that the appellant alone made the decision to change his plea. The following colloquy occurred between the appellant and his attorney during the submission hearing:

Q. Now, it was not until this morning that you indicated to me that you had intentions of changing your plea, isn't that correct?

A. Yes.

Q. Sir?

A. Yes.

Q. Now, did I not tell you that you had to make this decision, that I could not make this decision for you, right?

A. Yes.

Q. Is this your decision or was it my decision?

A. Mine.

Q. Your decision?

A. Yes.

Q. Kenneth's decision, right?

A. Yes.

Q. Do you feel that you have been pressured by me in any sense to plead guilty, improperly?

A. No.

Q. You've told me. Would you tell the Judge why you—what prompted you at this time to change your plea?

A. Just the circumstances, you know—

Q. Now, here's what I'm getting at. You were afraid that Tony might be electrocuted. Isn't that what you told me?

A. Yes.

**Q.** Sir?

**A.** Yes.

**Q.** And did I not explain to you that was okay for you to think that, but that you had to make the decision, not Tony? Did you make this decision or did Tony make it?

**A.** I did.

**Q.** Do you feel threatened by Tony, or anybody at all in this world?

**A.** No.

The trial court filed its findings of fact and conclusions of law with the clerk of the trial court on January 22, 1988. The court concluded that the appellant's "plea of guilty was freely, knowingly and voluntarily entered without coercion on the part of Mr. Chandler." The trial court further found: "It is the court's opinion that [the attorney] exercised proper professional judgment in advising the Petitioner of the weakness and strong points of his case. Once the attorney advises a client of his points, including the consequences, only the client can make a decision as to what plea to enter."

### I.

■ When the petitioner in a post-conviction proceeding is granted an evidentiary hearing to ventilate the grounds raised in his petition, the trial court's findings of fact are afforded the weight of a jury verdict. Consequently, this Court is bound by the trial court's findings of fact unless the evidence contained in the record preponderates against the court's findings or the judgment entered.[2]

■ Since the trial court found that the appellant failed to establish he was entitled to post-conviction relief, this Court must review the record to determine whether the

evidence preponderates against the trial court's findings of fact or the judgment that the trial court entered. In doing so this Court is bound by certain well-established rules governing appellate review. As this Court said in *Black v. State:*

> First, this Court cannot reweigh or reevaluate the evidence; nor can we substitute our inferences for those drawn by the trial judge. Second, questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are resolved by the trial judge, not this Court. Third, the appellant has the burden in this Court of illustrating why the evidence contained in the record preponderates against the judgment entered by the trial judge.[3]

With these rules in mind, this Court will proceed to consider the merits of the appellant's contentions.

### II.

#### A.

■ An accused may plead not guilty, guilty, or nolo contendere to the offenses alleged in a charging instrument.[4] If the accused refuses to plead, the trial court is required to enter a plea of not guilty.[5] As a general rule, an accused will plead not guilty at the arraignment. Later, the accused may change the plea to guilty and be sentenced without a trial on the merits. Others, like the appellant, may opt for a trial, but change the plea during the course of the trial.

■ An accused may plead guilty with or without the benefit of a plea bargain agreement. If the accused pleads guilty without an agreement, the plea must be to the offense alleged in the charging instru-

---

2. *Black v. State,* 794 S.W.2d 752, 755 (Tenn. Crim.App.1990); *Teague v. State,* 772 S.W.2d 932, 934 (Tenn.Crim.App.1988), *cert. denied,* 493 U.S. 874, 110 S.Ct. 210, 107 L.Ed.2d 163 (1989); *Brooks v. State,* 756 S.W.2d 288, 289 (Tenn.Crim. App.1988); *Vermilye v. State,* 754 S.W.2d 82, 84 (Tenn.Crim.App.1987).

3. 794 S.W.2d at 755.

4. Tenn.R.Crim.P. 11(a). In *Lawrence v. State,* 2 Tenn.Crim.App. 638, 641, 455 S.W.2d 650, 651

(1970), *cert. denied,* June 15, 1970, this Court said that the right to plead guilty is inherent in the right to plead not guilty; and both pleas must be equally available to the accused. *Lawrence* is cited with approval in *Williams v. State,* 491 S.W.2d 862, 867 (Tenn.Crim.App.1972), *cert. denied,* March 5, 1973. *See* A.B.A. Standards for Criminal Justice, *Pleas of Guilty* § 14–1.1 (1986).

5. Tenn.R.Crim.P. 11(a).

ment. A plea to a lesser included offense does not bar the state from trying the accused for the greater offense. A conviction for the greater offense does not violate the double jeopardy clause of either the United States [6] or the Tennessee [7] Constitution.[8]

■ When the accused opts to plead guilty, the plea must be voluntarily, understandingly and knowingly entered to pass constitutional muster.[9] As our Supreme Court said in *State ex rel. Barnes v. Henderson:* [10] "It is recognized in this State, as in all jurisdictions, that a plea of guilty must be made voluntarily and with full understanding of its consequences." [11]

---

6. U.S. Const. Amend. 5. The Double Jeopardy Clause contained in the Fifth Amendment is enforceable against the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

7. Tenn. Const. art. 1, § 10.

8. *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984).

9. The origin of this standard is a statement made by the United States Supreme Court in *Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). In *Kercheval* the Court stated: "Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." 274 U.S. at 223, 47 S.Ct. at 583, 71 L.Ed. at 1012. While this statement constituted *dicta* based upon the issue before the Court, it was quoted with approval in *Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473, 478 (1962). In this jurisdiction, the statement was quoted with approval in *Brooks v. State,* 187 Tenn. 67, 72, 213 S.W.2d 7, 9 (1947).

In *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), and *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the Supreme Court adopted the principles enunciated in *Kercheval.* In *Boykin,* the Court reiterated that a plea of guilty must be "voluntarily and understandingly entered." 395 U.S. at 244, 89 S.Ct. at 1713, 23 L.Ed.2d at 280. In *Brady,* where the plea was entered prior to *Boykin,* the Court stated the "requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized." 397 U.S. at 747, n. 4, 90 S.Ct. at 1468, n. 4, 25 L.Ed.2d at

As previously stated, the appellant contends that his plea was not voluntarily entered.

## III.

### A.

■ It is a well-established principle of law that a plea of guilty induced by "coercion, terror, inducements, [or] subtle or blatant threats," [12] is not voluntary.[13] In *Boykin v. Alabama,* the United States Supreme Court stated that such a plea is violative of the Due Process Clause of the Fourteenth Amendment.[14] Later, the Court indicated that such a plea was violative of the Fifth Amendment,

---

756, n. 4. Later, the Court stated in *Alford,* the Court stated that the "standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." 400 U.S. at 31, 91 S.Ct. at 164, 27 L.Ed.2d at 168.

The appellate courts of this state adhere to this standard. *See Wills v. State,* 859 S.W.2d 308, 309 (Tenn.1993) ("to be valid, a defendant's guilty plea must be entered freely and voluntarily"); *Blankenship v. State,* 858 S.W.2d 897, 904 (Tenn.1993) ("the core requirement of *Boykin* is 'that no guilty plea be accepted without an affirmative showing that it was intelligent and voluntary' "); *State v. Montgomery,* 840 S.W.2d 900, 903 (Tenn.1992) ("[t]he facts presented in this case do not meet the requirement that a knowing and voluntary includes the intentional relinquishment or abandonment of *known* rights"); *State v. Johnson,* 834 S.W.2d 922, 923 (Tenn.1992) ("[t]he due process provision of the federal constitution requires that pleas of guilty be knowing and voluntary").

10. 220 Tenn. 719, 423 S.W.2d 497 (1968).

11. 220 Tenn. at 727, 423 S.W.2d at 501.

12. *See Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279 (1969).

13. In *Capri Adult Cinema v. State,* 537 S.W.2d 896, 898 (Tenn.1976), the Supreme Court said "[i]t is elementary that if a guilty plea is entered through coercion, fraud, duress or mistake, appropriate relief may be obtained." In *Swang v. State,* 42 Tenn. (Cold.) 212, 213–214 (1865), the Supreme Court said that an accused should be permitted to withdraw a plea of guilty when it is induced by "fraud, putting [the accused] in fear [or] gross misrepresentations [by the district attorney general]."

14. *Boykin v. Alabama, supra.*

which protects against coerced incriminating statements made by the accused.[15]

█ The entry of a plea of guilty to avoid a death sentence or risk greater punishment does not, standing alone, make the plea involuntary.[16] In *Bratton v. State*,[17] this Court said:

> The law is also settled and is no longer open to question that a guilty plea is not rendered involuntary by the fact that the accused is faced with an election between a possible death sentence on a plea of not guilty and a lesser sentence upon a guilty plea.[18]

The decisions of the United States Supreme Court support this rule.[19]

## B.

█ When an accused announces that he desires to accept a plea bargain agreement and plead guilty, the trial court must question the accused in open court.[20] The purpose of this requirement is to ensure that the

plea is not the product of coercion, fear, a threat, or a promise which has not been included in the plea agreement.[21] Rule 11(d), Tenn.R.Crim.P., states:

> (d) Insuring That the Plea Is Voluntary.— The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plea guilty or nolo contendere results from prior discussions between the district attorney general and the defendant or his attorney.

The trial court must ask a sufficient number of questions to ensure that the accused is voluntarily entering the guilty plea.[22]

█ In this case, the trial court followed the mandate of Rule 11(d). Also, the attorney who represented the appellant asked him several questions to make it crystal clear on

---

**15.** *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

**16.** *Capri Adult Cinema v. State*, 537 S.W.2d 896, 898 (Tenn.1976); *Clenny v. State*, 576 S.W.2d 12, 15 (Tenn.Crim.App.1978), *cert. denied*, December 18, 1978; *State v. George*, 533 S.W.2d 322, 326 (Tenn.Crim.App.1975), *cert. denied*, December 1, 1975; *Waggoner v. State*, 512 S.W.2d 627, 630 (Tenn.Crim.App.1974), *cert. denied*, May 20, 1974; *Bratton v. State*, 477 S.W.2d 754, 757 (Tenn.Crim.App.1971), *cert. denied*, March 6, 1972; *Beaty v. Neil*, 4 Tenn.Crim.App. 86, 93, 467 S.W.2d 844, 848 (1971), *cert. denied*, May 3, 1971; *Lawrence v. State*, 2 Tenn.Crim.App. 638, 639–41, 455 S.W.2d 650, 651 (1970), *cert. denied*, June 15, 1970; *State ex rel. Wyatt v. Henderson*, 2 Tenn.Crim.App. 288, 295, 453 S.W.2d 434, 438 (1969), *cert. denied*, April 6, 1970; *State ex rel. Lawrence v. Henderson*, 1 Tenn.Crim.App. 199, 206–207, 433 S.W.2d 96, 99–100 (1968), *cert. denied*, November 4, 1968. *See Ingram v. Henderson*, 2 Tenn.Crim.App. 372, 454 S.W.2d 167 (1970).

There are several recent opinions of this Court that support this rule of law. *Harland Carl Pollard v. State*, Van Buren County No. 01–C–01–9106–CC–00183, 1993 WL 207650 (Tenn.Crim. App., Nashville, June 11, 1993), *per. app. dismissed* November 11, 1993 (accused entered plea of guilty to murder first degree and was sentenced to life); *Jackie McBee v. State*, Blount County No. 03–C–01–9104–CR–00101, 1992 WL 19274 (Tenn.Crim.App., Knoxville, February 7, 1992), *per. app. denied*, May 18, 1992) (accused, who was charged with first degree murder, was

sentenced to 50 years); *Charles Eugene Lane v. State*, Sevier County No. 111, 1990 WL 192701 (Tenn.Crim.App., Knoxville, February 25, 1990), *cert. denied*, February 25, 1991 (accused entered plea of guilty to murder first degree and was sentenced to life); *State v. Earl Roy Collins*, Knox County No. 1054, 1987 WL 17411 (Tenn.Crim. App., Knoxville, September 24, 1987) (accused entered plea of guilty to murder first degree and was sentenced to life).

**17.** 477 S.W.2d 754 (Tenn.Crim.App.1971), *cert. denied*, March 6, 1972).

**18.** 477 S.W.2d at 757.

**19.** *See Corbitt v. New Jersey*, 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978); *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

**20.** Tenn.R.Crim.P. 11(d). *See Wills v. State*, 859 S.W.2d 308 (Tenn.1993); *State v. Chamberlain*, 815 S.W.2d 534 (Tenn.Crim.App.1990).

**21.** Tenn.R.Crim.P. 11(d).

**22.** *See Wills v. State*, 859 S.W.2d 308 (Tenn. 1993); *State v. Chamberlain*, 815 S.W.2d 534 (Tenn.Crim.App.1990).

the record that the plea of guilty was not the product of fear, a threat or coercion.

## IV.

■ The assistant district attorney general's conduct in this case was not coercive. The assistant had every right to make the offer of life in the Department of Correction contingent upon both Jones and the appellant accepting the offer and pleading guilty. In addition, the state had the right to insist on trying Jones and the appellant jointly.

### A.

■ Although the vast majority of criminal prosecutions are resolved pursuant to a plea bargain agreement, the state is not required to engage in plea bargaining.[23] Thus, the district attorney general may refuse to plea bargain with an accused.[24]

■ When there are multiple defendants, the district attorney general may make an offer of settlement contingent upon all of the defendants accepting the offer and pleading guilty.[25] Furthermore, the district attorney general may withdraw or revoke the plea agreement.[26] In *State v. Turner*,[27] this Court said that a plea bargain agreement is "revocable until accepted by the trial court."[28]

■ A plea bargain agreement is subject to the trial court's approval.[29] The trial court may approve or reject the agreement.[30]

A plea bargain agreement is not enforceable until the trial court approves the agreement.[31]

---

**23.** *See State v. Hodges*, 815 S.W.2d 151, 155 (Tenn.1991) ("[t]here is no obligation on the part of the State to offer any benefit or advantage to the defendant by reason of entering a guilty plea"); *State v. Cone*, 665 S.W.2d 87, 94 (Tenn.), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2400, 81 L.Ed.2d 357 (1984) (state's refusal to offer accused a life sentence in a capital case did not constitute an "improper or selective prosecution"); *Williams v. State*, 491 S.W.2d 862, 867 (Tenn.Crim.App.1972), *cert. denied*, March 5, 1973 ("there is no obligation on the part of the state to offer and benefit or advantage to a defendant by reason of his [pleading guilty]"); *Harrison v. State*, 455 S.W.2d 617, 618 (Tenn.Crim. App.1970), *cert. denied*, June 1, 1970) ("[t]here is no compulsion on the part of the State ... to enter into [plea] negotiations").

This rule is predicated upon the theory that plea bargaining is part of the district attorney general's broad charging discretion, i.e., if and when a prosecution is to be instituted, the precise character of the offense to charge, and, once instituted, whether the prosecution should be dismissed. *See State v. Turner*, 713 S.W.2d 327, 330 (Tenn.Crim.App.1986), *per. app. denied*, June 2, 1986.

It is a well-established principle of law that an accused does not have a constitutional right to engage in plea bargaining. *Mabry v. Johnson*, 467 U.S. 504, 507, 104 S.Ct. 2543, 2545–47, 81 L.Ed.2d 437, 442 (1984); *Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30, 43 (1977); *State v. Washington*, 661 S.W.2d 900, 904 (Tenn.Crim.App.1983), *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2394, 81 L.Ed.2d 351 (1984).

**24.** *See State v. Cone*, 665 S.W.2d at 94.

**25.** *State v. Street*, 768 S.W.2d 703, 711 (Tenn. Crim.App.1988), *per. app. denied*, December 12, 1988 (offer to dismiss prosecution against defendant was contingent on co-defendant pleading guilty; the co-defendant rejected offer and a trial ensued after state revoked offer); *Hodges v. State*, 491 S.W.2d 624, 627–628 (Tenn.Crim.App.1973), *cert. denied*, March 5, 1973 (offer contingent on both defendants accepting the offer and pleading guilty; one defendant refused to accept the offer and a jury trial ensued). *See State v. Turner*, 713 S.W.2d 327, 329 (Tenn.Crim.App.), *cert. denied*, 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 360 (1986).

**26.** *See Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984); *State v. Johnson*, 781 S.W.2d 873, 879 (Tenn.Crim.App.1989), *cert. denied*, November 27, 1989; *State v. Street*, *supra*; *State v. Turner*, *supra*; *McCollum v. State*, 532 S.W.2d 63, 65 (Tenn.Crim.App.1975), *cert. denied*, December 1, 1975.

**27.** 713 S.W.2d 327 (Tenn.Crim.App.), *cert. denied*, 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 360 (1986).

**28.** 713 S.W.2d at 329. *See State v. Johnson*, 781 S.W.2d at 879.

**29.** *State v. Todd*, 654 S.W.2d 379, 382 (Tenn. 1983). In *Williams v. State*, 491 S.W.2d 862 (Tenn.Crim.App.1972), *cert. denied*, March 5, 1973, this Court said:

"[A]side from any agreement which may exist between a defendant and the State in reference to the entry of the guilty plea, the ultimate decision to accept or reject any such plea is to be made by the trial court, and if so accepted and received by the court, the final determination on the extent of the punishment to be meted out is the province of the jury."

491 S.W.2d at 867.

**30.** *State v. Todd, supra.*

**31.** *Santobello v. United States*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *State v. Street,*

## B.

It is permissible to join two or more defendants in the same indictment, presentment or information when each defendant is charged with accountability for each crime alleged in the charging instrument.[32] The purpose of this rule is "aimed at achieving improved judicial economy and efficiency."[33]

Whether there should be a severance of defendants is a matter which rests within the sound discretion of the trial court; and an appellate court will not interfere with the exercise of this discretion absent clear abuse appearing on the face of the record.[34] The test for determining whether a trial court has abused its discretion in denying a severance is "whether or not the defendant was clearly prejudiced in his defense by being jointly tried with his co-defendants."[35] In other words, the record must demonstrate that "the defendant was clearly prejudiced to the point that the trial court's discretion ended and the granting of [a] severance became a judicial duty."[36]

When the state has made an offer of settlement contingent upon all of the defendants accepting the offer and pleading guilty, a defendant who wants to accept the offer and plead guilty is not entitled to a severance from a defendant who has rejected the settlement and opted for a trial.[37] In *State v. Porterfield*,[38] an offer of life in the Department of Correction was made to both defendants. However, the offer was contingent on both defendants taking the offer and pleading guilty. One of the defendants opted to go to trial. The co-defendant, who was sentenced to death, argued that she was prejudiced by a joint trial because she was prevented from accepting the life offer and pleading guilty. The Supreme Court held that the appellant was not entitled to a severance on this ground. In ruling, the Court said:

> The record reveals that the state indicated to defense counsel that it would recommend life sentences for both defendants if both defendants would plead guilty. There was no offer to one defendant to the exclusion of the other. In short, even if the case had been severed, Mrs. Owens would have been subject to the imposition of the death penalty if the jury found the evidence sufficient. The trial court's denial of a severance under these circumstances was not an abuse of discretion.[39]

In *Peabody v. State*,[40] the defendant argued that the trial court abused its discretion

768 S.W.2d at 711; *State v. Turner*, 713 S.W.2d at 329; *Metheny v. State*, 589 S.W.2d 943, 945 (Tenn.Crim.App.1979), *cert. denied*, 445 U.S. 967, 100 S.Ct. 1658, 64 L.Ed.2d 243 (1980).

**32.** Tenn.R.Crim.P. 8(c). *See State v. Porterfield*, 746 S.W.2d 441, 446 (Tenn.), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988); *State v. Baker*, 751 S.W.2d 154, 162 (Tenn.Crim.App.1986). In *Hodges v. State*, 491 S.W.2d 624, 628 (Tenn.Crim.App.1972), *cert. denied*, March 5, 1973, this Court said that "the State has a right to jointly try defendants."

**33.** Committee Comment to Rule 8, Tenn. R.Crim.P.

**34.** *State v. Barber*, 753 S.W.2d 659, 671 (Tenn.), *cert. denied*, 488 U.S. 900, 109 S.Ct. 248, 102 L.Ed.2d 236 (1988); *State v. Porterfield*, 746 S.W.2d 441, 446 (Tenn.), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988); *State v. Coleman*, 619 S.W.2d 112, 116 (Tenn. 1981); *Hunter v. State*, 222 Tenn. 672, 681, 440 S.W.2d 1, 6 (1969); *State v. Burton*, 751 S.W.2d 440, 447 (Tenn.Crim.App.1988).

**35.** *Hunter v. State*, 222 Tenn. at 681, 440 S.W.2d at 6.

**36.** *Hunter v. State*, 222 Tenn. at 682, 440 S.W.2d at 6.

**37.** *State v. Porterfield*, 746 S.W.2d at 446; *Peabody v. State*, 556 S.W.2d 547, 550 (Tenn.Crim. App.1977), *cert. denied*, October 11, 1977; *Hodges v. State*, 491 S.W.2d 624, 627–628 (Tenn.Crim. App.1972), *cert. denied*, March 5, 1973; *Seaton v. State*, 4 Tenn.Crim.App. 452, 454–455, 472 S.W.2d 905, 905 (1971), *cert. denied*, October 18, 1971.

**38.** *State v. Porterfield*, 746 S.W.2d 441 (Tenn.), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218 (1988).

**39.** 746 S.W.2d at 446.

**40.** 556 S.W.2d 547, 550 (Tenn.Crim.App.1977), *cert. denied*, October 11, 1977. *Peabody* is cited with approval in *State v. Porterfield*, *supra*.

in denying his motion for severance. Here, as in *Porterfield* the state made an offer of settlement that was contingent upon both defendants accepting the offer and pleading guilty. The co-defendant wanted to go to trial; and the defendant was denied the opportunity to accept the state's offer. In ruling that the trial court properly denied the defendant's motion for severance on this ground, this Court said:

> Appellant Peabody complains that the cases should have been severed. Obviously these cases should have been tried together, unless avoidable and illegal prejudice would thereby result. No such prejudice has been demonstrated on this appeal.... The fact that Peabody would have accepted a plea bargain that was offered if both would accept, but Lofty refused, does not render the denial of a severance erroneous....[41]

An identical result was reached in *Hodges v. State*[42] and *Seaton v. State.*[43]

### C.

The actions of the assistant district attorney general in making an offer contingent upon both defendants accepting it and asking that the two defendants be tried jointly were in conformity with the laws of this jurisdiction. Moreover, these actions did not coerce the appellant to plead guilty to the offense of murder in the perpetration of a felony.

### V.

■ If the accused is to make "a voluntary and intelligent choice among the alternative courses of action" available to him,[44] counsel must advise the accused, among other things, of the choices that are available to him as well as the probable outcome of these choices.[45] If counsel is convinced that the accused should accept a plea bargain agreement and plead guilty, counsel should recommend that the accused opt for this choice.[46] Counsel may use reasonable persuasion when making the recommendation.[47]

■ As previously stated, counsel was convinced that it was in the appellant's best interest to accept the life offer and plead guilty given the fact the state had presented a "flawless" case and the appellant did not have a defense. Accordingly, counsel recommended that the appellant accept this choice; and counsel used reasonable persuasion in making the recommendation.

The record does not support the appellant's bare assertion that counsel forced or coerced him to change his plea and accept the state's offer.[48]

---

**41.** 556 S.W.2d at 550.

**42.** 491 S.W.2d 624, 627–628 (Tenn.Crim.App. 1972), *cert. denied*, March 5, 1973.

**43.** *Seaton v. State,* 4 Tenn.Crim.App. 452, 454–455, 472 S.W.2d 905, 905 (1971), *cert. denied*, October 18, 1971.

**44.** *North Carolina v. Alford,* 400 U.S. at 31, 91 S.Ct. at 164, 27 L.Ed.2d at 168.

**45.** A.B.A. Standards for Criminal Justice, *The Defense Function* § 4–5.1 (2nd ed. 1986) Commentary.

**46.** *See State v. McClennon,* 669 S.W.2d 705 (Tenn.Crim.App.1984), *per. app. denied*, April 30, 1984. In *McClennon,* defense counsel advised the accused to accept the plea bargain agreement offered by the state. The accused refused to follow counsel's advice; and he refused to cooperate with counsel following the recommendation. The accused then moved the trial court for a continuance and the appointment of another attorney to represent him. In holding that the trial court did not abuse its discretion in denying the accused's request, this Court stated:

> No legal reason was given for the appointment of additional counsel. It was counsel's duty to recommend the plea bargain agreement if counsel thought that it was to the defendant's best interest. The fact that the defendant chose not to cooperate with competent appointed counsel does not entitle him to the appointment of other counsel.

669 S.W.2d at 707.

**47.** The exertion of undue influence when attempting to persuade the accused to accept a plea bargain agreement and plead guilty is unprofessional. A.B.A. Standards for Criminal Justice, *The Defense Function* § 4–5.1(b) (2nd ed. 1986).

**48.** *See State ex rel. Lawrence v. Henderson,* 1 Tenn.Crim.App. 199, 207, 433 S.W.2d 96, 99–100 (1968), *cert. denied*, November 4, 1968 (the "record did not sustain the petitioner's insistence that he was coerced to plead guilty by the threats of the prosecuting attorney and the Public Defender that he would get the death penalty if he went to trial").

## CONCLUSION

In this case, the colloquy between the appellant and the trial court as well as the colloquy between the appellant and the attorney who represented him establishes that the mandate of Rule 11(d) was followed. Moreover, the transcript of the submission hearing supports the findings of fact made by the trial court to the effect that neither counsel nor the state forced or coerced the appellant to accept the plea bargain agreement, change his plea of not guilty to guilty, and accept a life sentence.

PEAY and SUMMERS, JJ., concur.

