IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 17, 2002 Session

## JEREMY KYLE MASSEY v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Lawrence County**
**No. 21869     Stella L. Hargrove, Judge**

**No. M2001-02736-CCA-R3-PC - Filed December 31, 2002**

The petitioner, Jeremy Kyle Massey, appeals the Lawrence County Circuit Court's denial of his petition for post-conviction relief. He challenges his conviction pursuant to a plea agreement with the state and contends that he received ineffective assistance of counsel and that his guilty plea was involuntary and constitutionally deficient. He further complains that the post-conviction court erroneously excluded certain testimony as irrelevant. We affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

William J. Eledge, Lawrenceburg, Tennessee, for the Appellant, Jeremy Kyle Massey.

Paul G. Summers, Attorney General & Reporter; Helena Walton Yarbrough, Assistant Attorney General; Mike Bottoms, District Attorney General; and James G. White II, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The petitioner was originally charged with premeditated, first-degree murder, *see* Tenn. Code Ann. § 39-13-202 (Supp. 2001), in connection with the October 12, 1998, knife slaying of Jeffrey Stem. Mr. Stem was assaulted and murdered inside his residence located on Massey Avenue in Lawrence County. The state's theory of prosecution was that the petitioner, the petitioner's male friend, Nathan Miller, and the victim's wife, Amelia Stem, conspired to kill the victim. The conspirators' cases were severed, and the petitioner's trial began on November 17, 1999. During a recess in the jury-selection process, the state and the petitioner reached an agreed disposition of the case. Pursuant thereto, the petitioner entered a "best-interest" guilty plea to the reduced charge of second-degree murder with an agreed sentence of 45 years to be served at 85 percent. *See id.* §§ 39-13-210 (1997) (second-degree murder); 40-35-501(i)(1), (2) (Supp. 2001) (no release eligibility for second-degree murder; defendant to serve 100 percent of sentence less

sentence credits earned and retained; no sentence reduction shall operate to reduce the sentence more than fifteen percent).

On March 27, 2000, Massey filed a timely *pro se* petition for post-conviction relief. The post-conviction court appointed counsel to represent the petitioner, and an amended petition was subsequently filed. The petition essentially sets forth three claims. First, the petition alleges ineffective assistance of counsel because trial counsel did not negotiate a more favorable plea agreement and did not adequately handle evidence favorable to the defense. Second, the petition alleges that the petitioner's plea was not entered voluntarily and intelligently. Last, the petition claims that the petitioner was denied his right to a fair and impartial jury as evidenced by the inclusion of biased jurors.

The post-conviction court conducted an evidentiary hearing on October 2, 2001. The petitioner's trial counsel, Shipp Weems, was called as a witness and examined by the petitioner. Mr. Weems had reviewed copies of the Tennessee Bureau of Investigation's serology and DNA reports in preparation for trial. Regarding the blood found in the petitioner's truck, Mr. Weems testified from his notes that the blood in the floorboard was insufficient for DNA analysis, although it had been determined that the substance was human blood. Other samples collected from the passenger's window, the passenger's side of the truck, one of the truck doors, the truck grille, and the driver's door handle were analyzed and found to be the victim's blood. Mr. Weems also said that none of the victim's blood was found on the petitioner's clothing, which was a "beneficial item of evidence for him." Moreover, had the case gone to trial, Mr. Weems explained that he would have pointed out that most of the victim's blood samples were found on the passenger's side of the vehicle and not on the driver's side.

Mr. Weems was asked about bloody shoe prints found inside the victim's residence. It was Mr. Weems's recollection that the TBI had determined that some of the shoe prints were consistent with the petitioner's shoes but that for other shoe prints, the TBI had been able to exclude the petitioner.

As for anticipated testimonial evidence that the state would present, Mr. Weems said that the statements given to the police by co-defendant Miller would not have been admissible in the petitioner's trial because Miller was not available for cross-examination.[1] Although Amelia Stem had pleaded guilty and was pending sentencing, her attorney had advised Mr. Weems that in all likelihood she would not be testifying against the petitioner. Moreover, Mr. Weems insisted that he would not have called Amelia Stem as a witness because in some of her statements to the police, she claimed that the petitioner was the person who cut the victim's throat.

---

[1] *See* Tenn. R. Crim. P. 14(c) (authorizing severance of defendants if state intends to offer out-of-court statement of co-defendant that makes reference to the defendant); *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620 (1968).

Mr. Weems testified that in the course of plea negotiations, the parties discussed reducing the charge of premeditated first-degree murder. Mr. Weems could not recall if facilitation of a felony was ever discussed. He explained that usually it is the state making an offer. He conceded that at the close of the proof, facilitation of a felony could have been a possible lesser-included offense.

One of the petitioner's allegations was that due to biased jurors, he was denied the right to a fair and impartial jury. Mr. Weems testified that during the jury selection process, the trial court inquired about pretrial publicity. Mr. Weems estimated that "maybe fifty to seventy-five percent of the people in the venire . . . indicated they had read or heard something about the case." The defense had filed a pretrial motion for change of venue; Mr. Weems believed that the motion had been taken under advisement to await jury selection. At one point, a majority of the jurors in the jury box had some knowledge about the case, including information that the victim had been beheaded and other information relayed by a crime scene officer. Had jury selection continued, Mr. Weems said that he would have requested individual *voir dire*, renewed the change of venue request, used all of the defense challenges to excuse as many jurors as possible, and built an appellate record of what the jurors had seen and heard prior to trial.

On cross examination by the state, Mr. Weems testified that the petitioner always maintained that he never went inside the victim's residence but that he did assist by acquiring some gloves and a ski mask. The petitioner told Mr. Weems that he waited outside in his truck and, afterwards, that he helped dispose of incriminating evidence.

Mr. Weems was asked about the petitioner's decision to terminate jury selection and enter a "best interest" guilty plea. Mr. Weems said that the decision came after the petitioner realized that many of the jurors had been exposed to pretrial publicity about the case. As a result, Mr. Weems approached prosecution counsel, pointed out that the defense had a good appellate issue in terms of the jury venire, and solicited a plea offer. The state offered to reduce the charge to second-degree murder with a sentence of 45 years at 85 percent service. Mr. Weems discussed the offer with the petitioner and members of his family. The petitioner agreed to plead but wanted to enter a "best interest" plea, which the trial court accepted.

In support of his allegations, the petitioner also called Jeremy Judkins as a witness. Judkins was serving a sentence for burglary and theft. Previously, he had been incarcerated in both the Lawrence and Giles Counties Jails where Miller and Amelia Stem had talked to him about the murder. The state objected to the testimony; the post-conviction court sustained the objection but permitted the petitioner to make a proffer. Judkins then proffered that while he was in the Giles County Jail, Miller told him that when the murder occurred, the petitioner was passed out in the truck.

Mr. Weems was recalled and testified that he had not previously heard about Miller's statement to Judkins. Armed with that knowledge, Mr. Weems said that he would have risked calling Judkins as a witness had the trial proceeded.

The petitioner was the final witness. He maintained that he had advised his counsel about Miller's statement to Judkins. He admitted on cross-examination that he had entered numerous guilty pleas in various courts. On each occasion, as happened in this case, the trial judge conducted a hearing to question him about his plea and to advise him of his rights. The petitioner was asked if he felt rushed into accepting the plea offer in this case. He said that he had not been rushed. The petitioner testified that he could not read or write, but based on what Mr. Weems explained to him about the plea, the petitioner agreed to enter a "best interest" plea.

At the conclusion of the petitioner's testimony, the state offered as exhibits a transcript of the preliminary hearing on the murder charges, containing the various statements that the petitioner and Miller had given to law enforcement officers, and a transcript of the jury voir dire and the petitioner's change of plea. During the plea submission hearing, the petitioner explained that he believed it was in his best interest to plead because "the way it [is] go[ing], I'm going to get found guilty. And this is less time than what I would get, during the trial."

The post-conviction court in this case took the matter under advisement and within three weeks issued a written order denying post-conviction relief. The order includes extensive factual findings and a cogent, succinct analysis of the various claims. Based upon the evidence presented, the post-conviction court found that trial counsel was well prepared and had fully discussed the case and the evidence with the petitioner. Regarding the plea agreement, the court determined, "Mr. Weems conveyed to Petitioner the best offer the State would make once the trial began. The State was under no obligation to offer anything less than second-degree murder." Continuing on this subject, the court found,

> Petitioner argues that his plea was not voluntary and intelligently made because of "the impaneled juror's preconceived conclusions as to his guilt prevented him from receiving a fair trial" [quoting post-conviction petition]. Petitioner had a choice to continue to select a jury and proceed with his trial. He chose to plead. The transcript of his plea (Exhibit 3) indicates that Petitioner was informed of and understood his constitutional right to a trial by jury, that he had sufficient time to discuss the plea with his lawyer and that he entered his best interest plea freely, voluntarily and knowingly, after discussing all of his rights and options with his lawyer. Petitioner has failed to show that there is a reasonable probability that, but for his lawyer's errors or deficiencies, he would not have pled and would have insisted on going forward with the trial.

Last, the post-conviction court rejected the petitioner's argument that the jury panel summoned was unfair and impartial. "No jury," the court noted, "had been sworn. No challenges had been exercised. Petitioner chose to take a plea bargain during the first round of voir dire."

We begin by reviewing the pertinent standards. Petitioners seeking post-conviction relief must prove their allegations by "clear and convincing evidence." Tenn. Code Ann. § 40-30-210(f) (1997). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). Moreover, an appellate court is bound by a trial court's findings of fact unless the facts of record preponderate against those findings. *Id.*

When seeking post-conviction relief on the basis of ineffective assistance of counsel, a petitioner must establish that the services rendered or the advice given fell below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). A petitioner must also show that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2067 (1984); *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Both of these prongs must be established for a petitioner to be entitled to relief. *Goad*, 938 S.W.2d at 370. In the context of a claim that ineffective assistance of counsel resulted in a guilty plea, a petitioner must prove that counsel performed deficiently and that but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted upon going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

In our estimation, the evidence overwhelmingly supports the post-conviction court's findings in this case, and it is unnecessary to dissect every point in detail. We add our own observation that nothing prevented the petitioner from proceeding with his trial and, if convicted, appealing his dissatisfaction with jury selection. The petitioner is not, however, entitled to relief via a collateral attack on his guilty plea, even if the incentive to plead was the prospect of a conviction at the hands of a jury that the petitioner believed to be biased.

Furthermore, it appears to us that the petitioner labors under a fundamental misconception about the plea bargaining process. First of all, the law is well settled that the choice between a trial that could result in severe punishment upon conviction and a guilty plea involving a less severe punishment does not render the guilty plea involuntary. *See Hicks v. State*, 983 S.W.2d 240, 248 (Tenn. Crim. App. 1998); *Parham v. State*, 885 S.W.2d 375, 381 (Tenn. Crim. App. 1994). In addition, "[t]here is . . . no obligation on the State to offer any benefit or advantage to a defendant by reason of his pleading guilty." *Harris v. State*, 875 S.W.2d 662, 666 (Tenn. 1994). Nothing compels the state to enter into plea negotiations, and an accused does not have a constitutional right to engage in plea bargaining. *See Mabry v. Johnson*, 467 U.S. 504, 507, 104 S. Ct. 2543, 2545-47 (1984); *State v. Turner*, 919 S.W.2d 346, 350 n.2 (Tenn. Crim. App. 1995).

Finally, by separate issue on appeal the petitioner argues that it was error for the post-conviction court to exclude Judkins' testimony that co-defendant Miller told Judkins that when the murder occurred, the petitioner was passed out in the truck. Inasmuch as the court permitted the petitioner to proffer Judkins' testimony, the question about excluding the testimony is moot. The court credited Mr. Weems's testimony that until the post-conviction hearing, he was unaware of Miller's statement to Judkins. There is no suggestion or hint that the state somehow suppressed this

matter. In the wake of trial counsel's accredited denial that he knew about Judkins' claim, the petitioner, moreover, fails to enlighten us how this testimony would entitle him to post-conviction relief.

The post-conviction court gave the petitioner ample opportunity to present his claims. The petitioner's evidence, as the court concluded, simply was not clear and convincing and did not entitle him to relief. We see no basis to reverse the court's denial of the post-conviction petition, and accordingly we affirm the denial.

_____
JAMES CURWOOD WITT, JR., JUDGE