# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
September 24, 2002 Session

## CRYSTAL RENA STURGILL v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Greene County**
**No. 01CR064     James E. Beckner, Judge**

---

**No. E2002-00385-CCA-R3-PC**
**February 4, 2003**

---

The petitioner, Crystal Rena Sturgill, appeals from the Greene County Criminal Court's denying her post-conviction relief from her convictions for three counts of first degree murder, one count of attempted first degree murder, two counts of especially aggravated kidnapping, two counts of aggravated kidnapping, and one count of Class D felony theft. Essentially, she contends (1) that her guilty pleas were not knowingly, intelligently, and voluntarily entered, (2) that due process was violated by the mass sentencing procedure, and (3) that she received the ineffective assistance of counsel. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

John S. Anderson, Rogersville, Tennessee, for the appellant, Crystal Rena Sturgill.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Eric D. Christiansen, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The petitioner was prosecuted with five codefendants for crimes committed against Vidar, Delfina, and Tabitha Lillelid, who were murdered, and Peter Lillelid, who survived. We need not recount the tragic details here. See State v. Howell, 34 S.W.3d 484 (Tenn. Crim. App. 2000). They all pled guilty to the crimes and after a sentencing hearing received consecutive sentences of life without parole for the murders and twenty-five years for the attempted murder. On appeal, the petitioner's sentences were ordered to be served concurrently for an effective sentence of life without parole. Id. at 515. Relative to her guilty pleas, the petitioner has complained that she was under the influence of medication and that she was coerced into pleading guilty because the state required all the defendants to plead guilty before agreeing to remove the death penalty from consideration. In

this respect, she has indicated that her guilty plea was based upon her concern that a codefendant, Dean Mullins, would have been exposed to the death penalty if they went to trial.

At the post-conviction evidentiary hearing, the petitioner and her two trial attorneys testified. The attorneys were the District Public Defender and one of his assistants. They detailed the amount of work they put into the case for ten to eleven months. They had sought to sever the petitioner's case from that of the codefendants at every stage. Upon the trial court's denial of a severance, they had pursued an interlocutory appeal all the way to the United States Supreme Court. The appeal was unavailing. They had hired a psychiatrist, a psychologist, an investigator, and a jury selection consultant. They had met with the petitioner regularly and discussed with her all facets of their investigation and case development. The record reflects that they filed over one thousand motions. They obtained information regarding the codefendants' trial strategies and developed a defense strategy, which they called the "accidental tourist," to separate the petitioner from her codefendants.

Although they were aware that the petitioner had been diagnosed with a borderline personality disorder and depression and that she was taking medication, they saw the petitioner always being communicative, articulate, and rational. They saw no signs of mental or psychological impairment, and the petitioner never complained about being under the influence of medication.

The assistant public defender testified that the petitioner's guilty plea was entered knowingly, understandingly, and voluntarily. He acknowledged that a concern for Dean Mullins was part of the reason for the petitioner's deciding to plead guilty, but he asserted that her decision was her own. He noted that she had implored her attorneys to save her life.

The assistant testified that they discussed all options and their ramifications with the petitioner. He said that, in fact, possible pleas and their consequences were fully discussed with the petitioner from early in their representation of her. He said that after she decided to plead guilty, she never wavered in that decision.

The petitioner testified that her best friend is Dean Mullins and that he was a major concern in her considering whether to take the state's offer. She said she did not "really believe" that she would get the death penalty but that she was concerned that Dean Mullins would. She said she felt a great deal of pressure in making the decision. She asserted that if she had received a separate trial, she would not have pled guilty.

The petitioner testified that she had been taking 100 milligrams of Doxepin daily. She acknowledged, though, that the trial court discussed this with her at the time of the plea and that she had told the court under oath that she was in full command of her faculties. She admitted that she was made aware of her waiving various rights, but she did not specifically remember being made aware that she was waiving claims regarding trial court errors in pretrial matters.

-2-

The petitioner acknowledged that she told her attorneys to save her life and that a "genuine possibility" of the death penalty existed. She admitted that she was concerned for herself as well as for Dean Mullins.

The petitioner acknowledged that it was her voluntary and intelligent decision not to testify at the sentencing hearing. She admitted that her story was told in a favorable light in the expert report given to the trial court. She also said that her attorneys were "very thorough," visited her "very regularly," and immediately addressed any concerns she had expressed. Finally, she admitted that they "left no stone unturned."

Relevant to this appeal, the trial court found the following regarding counsel and the petitioner's plea:

> [The attorneys] in trial preparation, according to the testimony of the petitioner at this evidentiary hearing, "left no stone unturned." They filed over one thousand (1,000) motions after researching the law and investigating the facts.
>
> They worked on the case for ten (10) or eleven (11) months, interviewing all possible witnesses, traveling to Arizona and Kentucky and every jurisdiction touched by the travels of the defendants.
>
> They obtained information as to the strategies of co-defendants and worked to make petitioner's compatible. They thus developed a strategy of the "accidental tourist."
>
> They were completely prepared for trial and completely prepared for mitigation if it became necessary at a bifurcated hearing.
>
> The attorneys were aware of the psychological findings of the experts and the medications prescribed to petitioner. They worked with her in the context of those facts.
>
> They found petitioner even with her diagnoses and prescriptions to be sober, intelligent, articulate and very understanding of all the matters explained to her.
>
> The attorneys were very thorough in explaining each and every issue. Petitioner clearly understood.
>
> The transcript of the allocution of the guilty plea unequivocally shows that petitioner understood her rights and was

clear minded and not under the influence of medications or psychological stresses.

On page eight (8) of the transcript the following colloquy occurs:

The Court: Have you had any alcohol or drugs in the last 24 hours?

Miss Sturgill: Yes

The Court: What?

Miss Sturgill: I have prescription medication, 100 milligrams of [Doxepin].

The Court: Is there anything about that that affects your ability to be clear of mind and understand what we're doing here today?

Miss Sturgill: No

A possible plea and consequences thereof were discussed from early in the representation of petitioner. These discussions continued throughout the representation. These attorneys were aware of the fact that the fate of co-defendant Mullins was important to petitioner and could influence her decision. However, in the balance it did not make a decisive difference. Petitioner had begged the attorneys all along to not let her die. She was very relieved not to be exposed to the death penalty. She never told them anything but that she wanted to take the plea offer and never later told them she wanted to reject it.

The attorneys fully and completely explained the plea, the consequences, the right to a jury trial, etc. and petitioner completely understood all those things.

The attorneys were and still are convinced petitioner was not coerced or influenced by psychological problems or drugs and that her plea was voluntarily and intelligently made.

The attorneys objected to the "in mass" sentencing, but their objections were overruled by the trial court.

The record will show that the sentencing was conducted in a fair and constitutionally appropriate manner.

. . . .

There was no constitutional infirmity in the "all or nothing" offer by the state and nothing has been offered at this evidentiary hearing to show that its effect was violative of due process. If counsel had raised the issue on appeal it would not have been successful.

The issue of sentencing was raised on appeal and has been previously determined adversely to petitioner.

The mitigation preparation was thorough and complete. The petitioner chose not to testify even as to remorse. Dr. McCoy's report was exhaustive with over fifty (50) attachments. The attorneys were allowed to file the report without objection or exception and not subject to cross examination.

From all of the foregoing this Court concludes that the petitioner in all aspects of the case received effective if not superior assistance of counsel. See Baxter v Rose 523 SW2d 920 (Tenn. 1975).

This Court further finds that the petitioner's plea was in all respects voluntarily, understandingly, knowingly and intelligently entered into and consummated.

The petitioner had the burden in the trial court to prove the factual bases for her claims for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Relative to the issue of ineffective assistance of counsel, it being a mixed question of law and fact, we review the trial court's conclusions regarding counsel's performance and prejudice under a de novo standard with no presumption of correctness. Id. at 457.

As for the petitioner's claims regarding her guilty pleas, we conclude that the evidence fully justifies the trial court's findings and conclusions. Plea offers by the state may legitimately require that all codefendants agree before the offer is extended to any defendant, and such a contingency does not equate with a coerced guilty plea. See, e.g., Parham v. State, 885 S.W.2d 375 (Tenn. Crim. App. 1994). In this respect, the fact that the petitioner's concern for Dean Mullins played a part in her decision to plead guilty does not negate the validity of her plea. Many factors other than the facts

may legitimately influence a decision to plead guilty, such as, reduction of stress on a defendant and his or her family, the removal of uncertain consequences, and reduction of actual exposure. See McMann v. Richardson, 397 U.S. 759, 768-69, 90 S. Ct. 1441, 1447 (1970). We also note that the record reflects that the petitioner was motivated to plead guilty in order to remove her exposure to the death penalty.

Relative to the petitioner's mental state, the evidence reflects that her mind was not clouded by her medication or mental condition. Indeed, she made no such claim in her testimony. The record reflects that the petitioner's decision to plead guilty was not coerced and that her guilty pleas were voluntarily, knowingly, and intelligently entered.

The petitioner claims that having one sentencing hearing for her and the codefendants violated due process, although she fails to explain how. We note, though, that the issue of the severance of her sentencing hearing was raised in her sentencing appeal, but rejected. Howell, 34 S.W.3d at 513. Thus, not only has no merit been shown for this claim, it has been previously determined.

Finally, as to the petitioner's claim of the ineffective assistance of counsel, we note that no specific action or nonaction is identified as inappropriate. In any event, the record fully supports the trial court's findings and conclusions regarding the quality of representation received by the petitioner, which she essentially admitted in her testimony. We conclude that the petitioner received the effective assistance of counsel.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE