IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

JUNE 1996 SESSION

FILED

July 25, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| VICTOR THOMPSON, | ) | |
| | ) | |
| Appellant, | ) | No. 02C01-9509-CR-00265 |
| | ) | |
| | ) | Shelby County |
| v. | ) | |
| | ) | Honorable John P. Colton, Jr., Judge |
| | ) | |
| STATE OF TENNESSEE, | ) | (Post-Conviction) |
| | ) | |
| Appellee. | ) | |

For the Appellant:

Paula Skahan
140 North Third Street
Memphis, TN 38103

For the Appellee:

Charles W. Burson
Attorney General of Tennessee
        and
Sarah M. Branch
Assistant Attorney General of Tennessee
450 James Robertson Parkway
Nashville, TN 37243-0493

John W. Pierotti, Jr.
District Attorney General
        and
Lorraine Craig
Assistant District Attorney General
201 Poplar Avenue
Memphis, TN 38103

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

The petitioner, Victor Thompson, appeals as of right from the denial of his petition for post-conviction relief by the Shelby County Criminal Court. He is presently in the custody of the Department of Correction serving an effective sentence of fifty years for his 1992 convictions upon guilty pleas for second degree murder and aggravated assault. The petitioner contends that he received the ineffective assistance of counsel resulting in his pleas not being entered knowingly and voluntarily. He argues that had his trial counsel informed him that voluntary intoxication can negate the specific intent for a crime or that a conviction of voluntary manslaughter was possible, he would have insisted on going to trial rather than entering his guilty pleas. The petitioner also argues that his trial counsel did not develop a defense strategy because she failed to investigate the facts of the case adequately, including the petitioner's prior treatment for intoxication and his level of intoxication on the night of the offense. We affirm the trial court's denial of relief.

The record reflects that the petitioner was originally charged with first degree premeditated and deliberate murder and aggravated assault, but pled guilty on the day of trial to the offenses of second degree murder and aggravated assault for agreed Range III sentences of fifty and ten years, respectively, to be served concurrently. At the post-conviction evidentiary hearing, the petitioner testified that he was represented at trial by two court-appointed attorneys and that his counsel advised him against having a preliminary hearing. He stated that his counsel as well as investigators visited him while in jail, but he asserted that they did not come very many times and would only stay about thirty minutes. He testified that he saw counsel at approximately six court appearances and that counsel talked to him approximately five to ten minutes and informed him of motions filed on his behalf. The petitioner said that he told his counsel about potential witnesses and admitted that counsel interviewed the witnesses and discussed with him their statements. He claimed that counsel never

discussed a defense, including self-defense, with him or told him that a person acting under adequate provocation is not guilty of first degree premeditated and deliberate murder.

The petitioner also testified that his counsel asked him about his background and that he told them about his drug and alcohol abuse and that he had gone through drug and alcohol rehabilitation a lot of his life. He stated that he also informed counsel that he had been using drugs and drinking wine all day when the offense occurred. He said that he told counsel that he had used approximately a quarter of an ounce of cocaine intravenously and drank a few gallons of wine. The petitioner recalled signing a release form for his counsel to obtain information from his medical records regarding treatment for drug and alcohol addiction, but he could not remember whether counsel ever obtained the records. According to the petitioner, he could not remember everything that occurred on the night of the offense, but he thought he shot a person in the leg and ran away because he was being beaten by someone.

Regarding counsel's negotiations for a plea agreement, the petitioner stated that his counsel informed him about an offer of forty years made by the state approximately two months before trial. He said that he rejected the offer because he wanted to go to trial. The petitioner testified that he did not see his counsel again until the day of trial and that his counsel advised him of the state's offer of fifty years and told him that he should accept the plea because the judge did not like "black-on-black crime" and because he would probably receive the death penalty or life imprisonment if convicted. He claimed that he wanted to go to trial instead of pleading guilty and being sentenced to fifty years but said that he entered the guilty pleas because he did not believe that his counsel was ready for trial. He asserted that his counsel did not discuss lesser included offenses, including second degree murder and voluntary manslaughter. He testified that his counsel did not show him the state's notice of intent

3

to seek the death penalty, did not inform him that enhanced punishment as a persistent offender was being sought, and did not explain the meaning of Range III when telling him about the state's offer. He also said that counsel told him that he would probably serve twelve years of his fifty-year sentence before being eligible for release. He stated that he would have insisted on going to trial if he had not been misled by his attorneys.

On cross-examination, the petitioner conceded that his counsel informed him that he could receive consecutive sentences if convicted. He stated that his counsel did not show him any records she obtained or discuss his medical records with him. He admitted that counsel filed several motions on his behalf and that she discussed a case that was similar to the facts of his case. The petitioner also admitted that he told the trial court several times that he wanted to plead guilty at the guilty plea hearing, but he claimed that he did not understand the consequences of his plea. He conceded that the trial court informed him that he would be required to serve forty-five percent of the fifty-year sentence and that he was waiving several rights by entering his guilty plea. The petitioner testified that he had earlier entered guilty pleas to at least three offenses.

The petitioner's counsel testified that she filed and argued several motions on behalf of the petitioner, including a motion for discovery. She stated that she met and discussed with the petitioner the charges against him and told him that the state was seeking the death penalty. The petitioner's counsel said that an investigator and social worker also interviewed witnesses provided by the petitioner and attempted to interview the state's witnesses, although some would not talk to the investigator. She said that she told the petitioner what they learned from the interviews and their investigation. The petitioner's counsel expressed the opinion that the state had a good case against the petitioner because several people, including the victim's family members, were eyewitnesses to the crimes. She testified that she discussed with the

petitioner that his defense at trial would be one of self-defense. She said that she did not believe the defense was a strong one but that she viewed it as the only defense available to the petitioner. The petitioner's counsel stated that she obtained the petitioner's medical records after the petitioner told her about his substance abuse problems and that he was drinking and taking a lot of drugs on the day of the offense. She said that she explained to the petitioner that substance abuse is not itself a defense but rather is a mitigator that would be relevant at the penalty portion of the trial. She stated that she could not remember whether she told the petitioner that she had received his medical records.

The petitioner's counsel testified that she visited the petitioner approximately six or seven times in the jail and that co-counsel visited the petitioner also. She stated that she spoke to the petitioner during court appearances as well. She said that she informed the petitioner that the state had revoked its original offer of forty years after the petitioner rejected it, but that she attempted to renegotiate the offer on the day of trial after the petitioner told her that he did not want to go to trial. The petitioner's counsel said that the offer of forty years was no longer available and that the assistant attorney general would only agree to a fifty-year sentence if the petitioner entered a guilty plea that day. She said that she told the petitioner about the fifty-year offer and that he stated that he wanted to plead guilty. She denied threatening or forcing the petitioner to plead guilty. Regarding the length of the petitioner's sentence pursuant to the guilty plea, the petitioner's counsel said that she explained the sentencing ranges to the petitioner and informed him that he would receive a fifty-year sentence. She testified that she was prepared on the day of trial and that she had subpoenaed witnesses.

On cross-examination, trial counsel testified that she believed that the petitioner was probably intoxicated at the time of the offense. She said that she had

considered that voluntary intoxication can be used to negate a specific intent, but that she determined that it was not a viable strategy after talking to the petitioner and interviewing witnesses. Counsel said that the petitioner told her that he was trying to collect money from the victims for the drugs he had earlier sold them when they refused to pay him. According to the petitioner's counsel, the petitioner stated to her that the victims hit him, chased him down the street and threw rocks and sticks at him. She stated that the petitioner told her that he ran away, obtained a gun, returned after about five to ten minutes and shot one of the victims. The petitioner's counsel stated that she recalled discussing the effect of the petitioner's voluntary intoxication with co-counsel but that she could not remember whether she discussed it with the petitioner. Regarding the petitioner's claim that she did not explain the possibility of a voluntary manslaughter conviction, counsel stated that she showed the petitioner a case with similar facts that dealt with adequate provocation for the offense and told him that she did not believe that the facts supported a voluntary manslaughter conviction.

At the guilty plea hearing on November 2, 1992, the state asserted that the proof at trial would have shown that on August 25, 1990, the petitioner was seen chasing the victims in a neighborhood and firing shots at them as he came around a corner. A bullet hit one of the victims in the head, killing him. Several witnesses, including three police officers, saw the petitioner shooting his gun at the victims. The record reflects that the trial court informed the petitioner of his rights, including the right to a jury trial, the right to confront and cross-examine witnesses, and the right against self-incrimination. It also shows that the trial court explained to the petitioner the range of punishment for the offenses and that as a Range III, persistent offender, he would have to serve a higher percentage of his sentence before being eligible for release.

At the guilty plea hearing, the petitioner stated that he had not been threatened or forced to enter the pleas and that he was freely and voluntarily entering

6

his pleas. The petitioner also said that his counsel had fully discussed his case and legal options with him and that he was satisfied with their representation. The petitioner asserted that he believed that the guilty pleas were in his best interest. The trial court accepted the petitioner's pleas, finding that the petitioner was knowingly and voluntarily entering his guilty pleas.

In denying the petitioner post-conviction relief, the trial court entered an eight-page order reflecting its findings of fact and conclusions of law. The trial court held that the petitioner received the effective assistance of counsel and that his guilty pleas were knowingly and voluntarily entered. Specifically, the trial court found that counsel met with the petitioner in jail at least six times, explained the charges to the petitioner, and informed him that his substance abuse was not a defense to murder but was a mitigator. The court also held that counsel was prepared for trial in that she interviewed witnesses, reviewed the petitioner's medical records, considered the petitioner's prior drug abuse and prior convictions, evaluated the strength of the state's case, researched case law and filed several pretrial motions. With respect to the petitioner's claim that he did not knowingly and voluntarily enter his guilty pleas, the trial court concluded that the petitioner's guilty pleas were constitutionally valid under Boykin v. Alabama, 395 U.S. 238, 895 S. Ct. 1709 (1969), and State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). It determined that the record reflected that the petitioner knowingly and voluntarily entered his guilty pleas based on his desire to avoid a trial and the possibility of a death sentence if convicted. See Parham v. State, 885 S.W.2d 375 (Tenn. Crim. App. 1994); Bratton v. State, 477 S.W.2d 754 (Tenn. Crim. App. 1972).

On appeal, the petitioner challenges his convictions based upon claims that he received ineffective assistance of counsel that caused him to enter unknowing and involuntary guilty pleas. Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is upon the petitioner to show (1) that

counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied, as well, to the right to counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974) and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland v. Washington, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982) (counsel's conduct will not be measured by "20-20 hindsight"). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See Hellard, 629 S.W.2d at 9; DeCoster, 487 F.2d at 1201.

Also, we note that the approach to the issue of the ineffective assistance of counsel does not have to start with an analysis of an attorney's conduct. If prejudice

is not shown, we need not seek to determine the validity of the allegations about deficient performance.  <u>Strickland v. Washington</u>, 466 U.S. at 697, 104 S. Ct. at 2069.

The burden was on the petitioner in the trial court to prove his allegations that would entitle him to relief by a preponderance of the evidence.[1]  <u>Brooks v. State</u>, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988).  On appeal, we are bound by the trial court's findings unless we conclude that the evidence preponderates against those findings.  <u>Black v. State</u>, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).  The petitioner has the burden of illustrating how the evidence preponderates against the judgment entered.  <u>Id</u>.

In this respect, the petitioner fails to show how the trial court's findings are incorrect.  Moreover, we conclude that the evidence of record does not preponderate against the trial court's findings and that the law we have previously cited supports its conclusions.  In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
Joseph M. Tipton, Judge

CONCUR:

_____
David H. Welles, Judge

_____
Jerry L. Smith, Judge

---

[1]For post-conviction petitions filed after May 10, 1995, petitioners have the burden of proving factual allegations by clear and convincing evidence.  T.C.A. § 40-30-210(f).

9