IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 29, 2002 Session

**EDWARD DEAN MULLINS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Greene County**
**No. 01CR159     James E. Beckner, Judge**

**No. E2002-00730-CCA-R3-PC**
**February 24, 2003**

The petitioner, Edward Dean Mullins, appeals the trial court's denial of post-conviction relief. The issues presented for review are (1) whether the petitioner was denied the effective assistance of counsel; (2) whether the petitioner's guilty pleas were knowingly and voluntarily entered; (3) whether the trial court erred by denying the petitioner's claim of prosecutorial misconduct; (4) whether the trial court erred by denying the petitioner's motion for severance; and (5) whether the trial court erred by ruling that the indictment need not include the applicable aggravating circumstances. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOE G. RILEY and ROBERT W. WEDEMEYER, JJ., joined.

Douglas L. Payne, Greeneville,  Tennessee, for the appellant, Edward Dean Mullins.

Paul G. Summers, Attorney General & Reporter; Mark A. Fulks, Assistant Attorney General; and Eric Christiansen, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On August 6, 1997, Vidar Lillelid, his wife, Delphina, and their six-year-old daughter, Tabitha, were murdered near an interstate rest stop in Greene County. Two-year-old Peter Lillelid suffered two life-threatening gunshot wounds, one of which caused the loss of an eye. The petitioner and his co-defendants, Karen Howell, Natasha Cornett, Crystal Sturgill, Joseph Risner, and Jason Bryant, each entered pleas of guilt to the attempted murder of Peter Lillelid and to the first degree murders of Vidar, Delphina, and Tabitha Lillelid. The petitioner and each of the other defendants also pled guilty to two counts of especially aggravated kidnapping, two counts of kidnapping, and one count of theft of property valued at between $1,000 and $10,000. In exchange for the pleas of guilt, the state withdrew its request for the imposition of the death penalty as to the petitioner,

Natasha Cornett, Joseph Risner, and Crystal Sturgill. Because Howell and Bryant were minors at the time of the offenses, they did not qualify for the death penalty. At the conclusion of the sentencing hearing, the trial court sentenced each of the defendants to life in prison without the possibility of parole for each of the first degree murder convictions and 25 years for the attempted murder conviction. All of these sentences were ordered to be served consecutively. The trial court imposed concurrent sentences of 25 years for the two counts of especially aggravated kidnapping, 12 years for the two counts of aggravated kidnapping, and four years for theft.

The petitioner and the other defendants did not appeal the sentences imposed for the theft and kidnapping convictions. In State v. Howell, 34 S.W.3d 484 (Tenn. Crim. App. 2000), this court affirmed the sentences imposed upon the petitioner for each of the three first degree murder convictions and the attempted murder. Application for permission to appeal to the supreme court was denied on September 25, 2000.

On September 24, 2001, the petitioner filed a petition for post-conviction relief. In the original petition, the petitioner claimed that his guilty pleas were neither knowingly nor voluntarily entered, that his attorneys in both Arizona and Tennessee were ineffective, that the denial of a severance of trial violated his constitutional right to due process, and that the prosecutor was guilty of misconduct by seeking the death penalty after promising otherwise. After the appointment of counsel, the petition was amended to include an allegation that the omission of any reference in the indictment to the statutory aggravating circumstances for the murders violated state and federal constitutional principles. See Apprendi v. New Jersey, 530 U.S. 466 (2000).

At the evidentiary hearing, the petitioner testified that while awaiting extradition to Tennessee from a Bisbee County, Arizona, jail, he was represented by attorney Yvonne Ayers. The petitioner recalled that upon the advice of Ms. Ayers, he reached an agreement with officers in Arizona to assist them in the investigation of the crime. It was the petitioner's understanding that "if I told the truth, was proven not to be the shooter, and showed them where the weapons were, that they would not seek the death penalty." After accepting the proposal, the petitioner drew a diagram which led officers to the discovery of the murder weapons. According to the petitioner, Ms. Ayers had reached the cooperation agreement with Berkeley Bell, District Attorney General for the Third Judicial District in Tennessee.

The petitioner testified that after he arrived in Tennessee, he was represented by attorneys Steve Owens, Clarissa Friend, and Fred Lance, and that Attorney Owens acted as his lead counsel. He stated that he was with Attorney Owens when he received notice of the state's intention to seek the death penalty. The petitioner claimed that Attorney Owens was ineffective by failing to force the district attorney to comply with the cooperation agreement and by failing to have his case severed from those of the other defendants.

The petitioner also said that after the state offered to withdraw its request for the death penalty in exchange for guilty pleas, Attorneys Owens and Friend failed to advise him of the statutory minimum and maximum sentences he faced for first degree murder. He acknowledged that

he understood that the state's proposal was a conditional "package deal," requiring each of the defendants to accept the offer. The petitioner testified that based upon his attorneys' advice that, in the event of trial, he would likely receive the death penalty, and based upon his own concern for the well-being of his co-defendants, especially Cornett, he chose to accept the proposal by the state. The petitioner stated that he understood the bad publicity Cornett had received and expressed concern that "it really didn't ever look too good for her . . . and she didn't deserve the death penalty." He estimated that he considered the agreement for about 30 minutes before signing. While conceding that he visited with his parents and his sister, all of whom encouraged him to accept the offer, before he expressed approval of the plea agreement and signed the documentation, the petitioner claimed that he would not have accepted the proposal if the state had not filed the death penalty notice. He complained that Attorney Owens failed to advise him of the possibility of a sentence of life without parole and failed to explain that the plea served as a waiver of his right to have a jury determine the sentence. The petitioner contended that until he read the newspaper sometime after the submission hearing, he was unaware that the minimum sentence for a term of life was 51 years.

While claiming that his attorneys could have done more, the petitioner acknowledged that he was evaluated by a psychiatrist, Michael Prevetz, on several occasions, that he met with Attorney Owens seven or eight times for up to two hours on each occasion, and that he conferred with Deborah Spakogia, an investigator for the defense, between 15 and 20 times. The petitioner admitted that he was in court with Attorney Owens on 20 or 30 or other occasions but complained that Attorney Owens failed to contact him after the sentencing hearing about possible issues to present on appeal.

The petitioner conceded that he understood the charges, the state's theory of criminal responsibility, and the range of punishment at the time of the sentencing hearing. Upon questioning, he expressed awareness that the computation for a life sentence was at least 51 years. He expressed particular dissatisfaction with the sentence imposed by the trial judge, especially in view of the extensive amount of mitigation evidence presented on his behalf. The petitioner admitted that he made no effort to withdraw his pleas before the sentencing hearing.

Attorney Owens testified that he was associated as counsel by Attorney Friend shortly after the commission of the murders. His practice was primarily criminal law and he stated that he had participated in several capital cases. Attorney Owens testified that he hired an investigator, communicated with Ms. Ayers, met with the prosecutor, and assigned Attorney Friend the responsibility of preparing the presentation of mitigation evidence. A psychiatrist was employed to assist in the identification of possible issues. Attorney Owens recalled that at the sentencing hearing, it was his objective to establish that the petitioner had a good reputation in the community until he met Natasha Cornett, that he had participated extensively in church activities, that he cooperated during the investigation, and that he expressed remorse for the crimes. Attorney Owens testified that for a period of time before the guilty pleas he had associated Fred Lance as local counsel and that Attorney Lance had provided him with information about the prosecutors, the trial judge, and the juries. He testified that later Lance was replaced by Attorney Randy Fallon, who had prior experience in death penalty cases. He explained that by the time of the sentencing hearing, Attorney

Fallon was no longer involved in the defense. Attorney Owens, who was initially retained by the petitioner's family, was eventually appointed on an indigent basis when their resources were exhausted. He described the resources that the state provided during trial preparation as virtually unlimited.

Attorney Owens rejected the petitioner's claim that he did not attempt to enforce the cooperation agreement, testifying that he filed pleadings to set aside the death penalty notice on that ground. He pointed out that the trial judge reserved ruling on the motion because the proof at trial might indicate that the petitioner had actually fired one or more of the shots, thereby breaking an important condition of the agreement. Attorney Owens testified that he filed an application for an interlocutory appeal when the trial judge refused to rule, but was unsuccessful in his efforts. He explained that the district attorney had chosen not to honor the agreement because scientific testing indicated the presence of gun powder residue on the petitioner's clothing, an indication that he may have participated in the shootings. Attorney Owens also testified that when the trial court denied his motion to sever the petitioner's case from the others, he again sought an interlocutory appeal and again was unsuccessful. He described the state's plea offer as unexpected and specifically recalled explaining to the petitioner that if he chose to enter a guilty plea, he would waive any prior issues presented on his behalf. It was his opinion that a life sentence was the best possible result of a trial, having informed the petitioner that the death penalty would be likely. Attorney Owens also recalled informing the petitioner that the guilty pleas would serve as a waiver of the severance issue and any possible issue concerning the trial court's failure to timely enforce the cooperation agreement. It was his recollection that the petitioner, after being fully advised that a life sentence was at least 51 years, accepted the plea offer without reservation. He described the petitioner as fully aware that the maximum possible sentence was life without the possibility of parole. He specifically recalled the trial judge's warning the petitioner that the guilty plea served as a waiver of grounds for appeal.

Shortly after the conclusion of the evidentiary hearing, the trial court entered a memorandum and order with extensive findings of fact. In summary, the trial judge denied post-conviction relief, ruling as follows:

1.      that Attorney Owens, the only one of four attorneys the petitioner challenged at the evidentiary hearing on grounds of ineffective assistance of counsel, had practiced law for 28 years, had participated in several capital cases, and had undergone specialized training in this state and others in preparation for the case;

2.      that Attorney Owens had been effective in his representation of the petitioner. In particular, that he had sought a severance of the trial, that he had sought enforcement of the cooperation agreement entered into in Arizona, that he had adequately prepared by way of attorney-client conferences and by the use of a psychiatrist and a criminal investigator, and that he had sufficiently advised the petitioner of his rights prior to the acceptance of the guilty plea offer made by the state;

3.      that the petitioner fully understood that the issues presented by his counsel prior to trial would be waived by the entry of the guilty plea;

4.      that the petitioner knowingly and voluntarily entered pleas of guilt after being advised of the full panoply of his constitutional rights as well as the possible range of punishment for each offense. Further, that even though two weeks elapsed between the guilty plea and the sentencing hearing, the petitioner made no request to withdraw his plea; and

5.      that the holding in Apprendi v. New Jersey, 530 U.S. 466 (2000), did not require the charging instrument to include the possible aggravating circumstances in capital cases.

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978).

I

In order for petitioner to be granted relief on grounds of ineffective assistance of counsel, he must establish that the advice given or the services rendered were not within the range of competence demanded of attorneys in criminal cases and that, but for his counsel's deficient performance, the result of his trial would have been different. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This two-part standard, as it applies to guilty pleas, is met when the petitioner establishes that, but for counsel's errors, he would not have pled guilty and would have insisted on a trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985). Courts must indulge a strong presumption that the conduct of defense attorneys at trial falls within the range of reasonable professional assistance and must evaluate their performance from their perspective at the time of the alleged deficiencies and in light of the totality of the circumstances. Strickland, 466 U.S. at 690. The petitioner must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. Id. at 695. Deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In this appeal, the petitioner argues that his trial counsel failed to adequately explain the effect of the guilty pleas or the waiver of the right to appeal pre-trial rulings such as the severance and cooperation agreement issues. He submits that his trial counsel was ineffective for failing to

ensure that a jury impose punishment rather than the trial court. He complains that Attorney Friend lacked experience and indicated no particular expertise in the area of mitigation. Finally, he contends his trial counsel should have attacked the validity of the indictment based upon its failure to include the statutory aggravating circumstances applicable to the crimes. See Apprendi v. New Jersey, 530 U.S. 466 (2000); Jones v. United States, 526 U.S. 227 (1999). The petitioner contends that the decisions in Apprendi and Jones require that any fact that would increase the maximum penalty for a crime be charged in the indictment, submitted to a jury, and proved beyond a reasonable doubt.

Initially, the record supports the trial court's conclusion that the petitioner was adequately advised of his waiver of the right to appeal his severance and immunity agreement issues by entering pleas of guilt. Prior to the submission hearing, the state refused to permit the petitioner to reserve any questions for appeal as a condition for the guilty pleas. Nevertheless, the petitioner, after being fully warned by the trial judge of the consequences of his pleas, expressed satisfaction with the terms. Moreover, he made no effort to withdraw the pleas during the two weeks that ensued between the submission and sentencing hearings. Finally, the state's plea offer required the petitioner to waive jury sentencing. Otherwise, he faced trial and the possibility of a death sentence. The record indicates that the petitioner accepted those terms primarily due to his overwhelming desire to avoid the death penalty. That he had a corresponding desire to allow his co-defendants to do the same is a legitimate reason to accept a plea agreement and suggests that the plea was voluntary and based upon an understanding of its consequences. See generally Parham v. State, 885 S.W.2d 375 (Tenn. Crim. App. 1994). Trial counsel could not have been deficient in his performance by failing to insist that a jury decide punishment when that alternative was not available under the terms of the agreement.

Lastly, the petitioner has failed to demonstrate how counsel might have been deficient by failing to present the Apprendi issue. In Jones, the United States Supreme Court ruled that the constitutional guarantees of due process, notice and trial by jury require that, except for a prior conviction, any fact used to enhance sentence above the statutory maximum "must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Jones, 526 U.S. at 243, n.6. In Apprendi, the Court held that the Fourteenth Amendment extended these requirements to state statutory schemes. Apprendi, 530 U.S. at 476.

In State v. Dellinger, 79 S.W.3d 458, 466-67 (Tenn. 2002), our supreme court ruled that the decision in Apprendi was not applicable to capital sentencing in Tennessee. This ruling was based on a number of grounds, at least three of which apply here: (1) The death penalty is within the statutory range of punishment prescribed by the legislature for first degree murder and Apprendi applies only to enhancement factors used to impose a sentence above the statutory maximum; (2) district attorneys in this state must notify the defendant no less than thirty days before trial of the intent to seek the death penalty and must specify the applicable aggravating circumstances satisfying the requirements of notice and due process; and (3) our capital sentencing procedure requires that the jury find any statutory aggravating circumstance beyond a reasonable doubt.

In this case, the petitioner received sentences of life without the possibility of parole. A sentence of life without the possibility of parole is within the statutory range provided for first degree murder. The petitioner received notice of the aggravating factors upon which the state would rely at sentencing. Finally, the petitioner specifically waived his right to have a jury determine the proper sentences. Under these circumstances, the petitioner is not entitled to relief.

II

Next, the petitioner argues that his pleas were neither knowingly nor voluntarily made. He contends that because he was denied the effective assistance of counsel and was under extreme duress due to the district attorney's refusal to recognize the cooperation agreement, his guilty pleas should be set aside.

In Boykin v. Alabama, 395 U.S. 238, 243 (1969), the United States Supreme Court ruled that defendants should be advised of certain of their constitutional rights before entering pleas of guilt. Included among those are admonitions regarding the right against self-incrimination, the right to confront witnesses, and the right to trial by jury. "[T]he core requirement of Boykin is 'that no guilty plea be accepted without an affirmative showing that it was intelligent and voluntary.'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Fontaine v. United States, 526 F.2d 514, 516 (6th Cir. 1975)). The plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25 (1970). If the proof establishes that the petitioner was aware of his constitutional rights, he is entitled to no relief. Johnson v. State, 834 S.W.2d 922, 926 (Tenn. 1992). A plea which is the product of "ignorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats" is not voluntary. Boykin, 395 U.S. at 242-43.

The totality of the circumstances to be considered include "the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial." Blankenship, 858 S.W.2d at 904.

The record demonstrates that the petitioner was particularly articulate in providing testimony at the evidentiary hearing. At the sentencing hearing, there was proof that the petitioner had led a productive life until just prior to the commission of the murders, that he understood the seriousness of the offenses, that he had expressed remorse, and that he had felt a responsibility to assist the officers in their investigation. The evidence demonstrated that Attorneys Owens and Friend had prepared extensively for the trial, conferred regularly with the petitioner, and provided sound advice without being coercive. The stakes were high. The petitioner's life was legitimately at risk. So were the lives of all but two of his co-defendants. From all of the circumstances, it is our view that the petitioner knowingly and voluntarily entered his pleas of guilt with a complete understanding of the consequences.

III

Next, the petitioner argues that he is entitled to relief based upon grounds of prosecutorial misconduct, the denial of a severance for trial, and a defective indictment. The petitioner argues that the district attorney was guilty of prosecutorial misconduct for seeking the death penalty in contravention of the terms of the cooperation agreement. See State v. Howington, 907 S.W.2d 403 (Tenn. 1995) (informal agreements between a prosecutor and a defendant are judicially enforceable). The petitioner also complains that in view of his limited participation in the crimes, the trial court's denial of his motion for severance was erroneous. The petitioner's argument that the indictment was defective is based upon the state's failure to include aggravating circumstances, citing Ring v. Arizona, 536 U.S. 584 (2002), as authority for the argument.

In our view, the petitioner has waived each of these issues as grounds for relief. A knowing and voluntary plea of guilt entered upon the advice of counsel constitutes a waiver of all non-jurisdictional and procedural defects or infirmities, if any, in a prior stage of the proceedings. State v. Gross, 673 S.W.2d 552, 553 (Tenn. Crim. App. 1984); State v. Wilkes, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984). Even constitutional defects are waived by a voluntary guilty plea. See State v. McKissack, 917 S.W.2d 714, 716 (Tenn. Crim. App. 1995); Recor v. State, 489 S.W.2d 64 (Tenn. Crim. App. 1972).

The Post-Conviction Procedure Act provides that "a ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless" the claim is based upon a newly recognized constitutional right with retroactive application or the ground was not presented as the result of state action in violation of the federal or state constitution. Tenn. Code Ann. § 40-30-206(g).

At the time the petitioner entered his plea of guilt, the trial court had not yet ruled upon his motion to enforce the cooperation agreement by striking the state's request for the death penalty. Further, the petitioner's trial counsel had established a proper record to appeal the trial court's denial of the motion for a severance. While this court had denied the application for an extraordinary appeal, the petitioner and his trial counsel were at liberty to present the ground on direct appeal in the event of a conviction. The petitioner's guilty plea served as a waiver of that and any other possible errors made up to that point in the proceeding. Further, the petitioner should have presented any objections to the indictment prior to entering the guilty plea. He failed to do so. Even if he had, the ruling in Dellinger, as indicated, establishes that no relief would have been granted for the failure of the state to include in the charging instrument the aggravating circumstances upon which it relied.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE

-8-