IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 20, 2004

## WILLIAM BERRIOS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Knox County**
**No. 72749     Richard R. Baumgartner, Judge**

**No. E2003-01791-CCA-R3-PC**
**May 5, 2004**

The petitioner, William Berrios, appeals the post-conviction court's denial of his post-conviction relief petition in relation to his guilty plea to felony murder for which he received a life sentence. On appeal, the petitioner contends: (1) the state failed to satisfy a condition of the plea agreement; and (2) his plea was unknowingly and involuntarily entered. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellant, William Berrios.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Philip H. Morton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner was charged with felony murder, premeditated first degree murder, especially aggravated robbery, and theft as a result of his participation in the homicide of David Zimmerlin on June 28, 1997. Pursuant to a plea agreement, the petitioner pled guilty to felony murder and received a life sentence. *See* Tenn. Code Ann. § 39-13-202(a)(2).

According to the facts presented by the state at the plea hearing, when the victim did not arrive for work on Monday morning, his co-workers went to his apartment at the Knottingham North Apartments in Knoxville, Tennessee. The manager of the apartment complex unlocked the door; they observed "something was not right"; and they contacted the police.

The police discovered the victim's body lying in a fetal position on his bed, and it was partially covered with a bed sheet. His hands were bound with duct tape; a black plastic garbage bag covered his head; and duct tape encircled the outside of the garbage bag encasing his head. The

apartment had been stripped of its contents. The state believed the victim was killed on Friday evening upon returning to his residence from work.

The police learned that someone had used the victim's credit cards at various stores. The descriptions given by the stores' clerks matched the petitioner and his wife, Kimberly Berrios. The Berrioses lived in the same apartment complex as the victim. The police traced items taken from the victim's apartment to local pawn shops where the items had been exchanged for cash. The receipts of the transactions indicated the Berrioses pawned the items. The police also lifted the petitioner's fingerprint from the garbage bag which covered the victim's head. Kimberly Berrios pled guilty to felony murder and was prepared to testify regarding the petitioner's involvement in the offense.

## I. POST-CONVICTION RELIEF HEARING

At the post-conviction relief hearing, the petitioner testified he was incarcerated at Northeast Correctional Center at the time he entered his plea. The petitioner informed defense counsel that due to safety concerns, he wanted to serve his sentence in Morgan County until he could be transferred to Illinois or Puerto Rico. The petitioner explained that he would not have entered the plea unless these terms were included in the plea agreement.

The petitioner testified that after entering the plea, he was transferred to a facility in Nashville and then to Northeast Correctional Center in violation of the plea agreement. Approximately six months after entering the plea, the petitioner learned that he would not be permitted to serve his sentence in Illinois or Puerto Rico because Tennessee did not have an interstate compact agreement with either jurisdiction. The petitioner maintained that prior to entering the plea, defense counsel knew he could not serve his sentence in either jurisdiction and failed to provide him with this information. The petitioner stated defense counsel assured him that he would be transferred. The petitioner further stated that during the plea hearing, a member of his defense team informed the trial court that the district attorney had written a letter to an official with the Tennessee Department of Correction (TDOC) recommending placement and that the letter only served as a recommendation. The petitioner acknowledged that nothing in the transcript of the guilty plea hearing indicated his transfer was a condition of the plea agreement.

The petitioner testified he had planned to enter a plea on June 6, 2000, but then declined the plea agreement. On June 9, while at the courthouse, the petitioner informed defense counsel that he did not want to plead guilty and that he wanted a trial. Defense counsel then exited the room, and the petitioner spoke to Kimberly Berrios, his wife and co-defendant. The petitioner stated she encouraged him to accept the plea agreement because she did not want him to receive the death penalty.

The petitioner testified that after meeting with his wife, defense counsel encouraged him to enter the plea and told him to think about the stress which he had caused his family. Defense counsel informed the petitioner that he would face the death penalty if he did not enter the plea. The petitioner stated that as a result, he pled guilty to the offense. The petitioner further stated defense counsel instructed him to inform the trial court that he was voluntarily entering the plea.

-2-

Kenneth Irvine, one of the members of the petitioner's defense team, testified that prior to entering the plea, the petitioner asked defense counsel to investigate the possibility of serving his sentence in either Illinois or Puerto Rico. Irvine recalled they focused on Illinois and enlisted the aid of a friend of the petitioner's family in Chicago. Irvine did not recall that the petitioner required serving his sentence in either Illinois or Puerto Rico as a condition of the plea. Irvine explained that if the parties had agreed to the transfer as a condition to the plea, this would have appeared in the written plea agreement or would have been stated on the record during the plea hearing.

Irvine testified defense counsel attempted to place the petitioner in a facility in Morgan County where the petitioner felt he would be safe. The district attorney wrote a letter of support to a TDOC official. In the letter, the district attorney acknowledged the TDOC official would ultimately decide where to house the petitioner. The letter further stated the district attorney had "no objections should the Tennessee Department of Correction's policies allow Mr. Berrios to serve his sentence in an Illinois penitentiary." Irvine explained that this meant the state would have no objections in the event Tennessee subsequently had a contract with Illinois.

Irvine testified that on several occasions, the parties negotiated a plea agreement which the petitioner then rejected. Irvine stated Kimberly Berrios, who planned to testify at trial, requested permission to speak to the petitioner prior to the plea, and the petitioner agreed to meet with her. She had entered a guilty plea to felony murder relating to the incident but had not yet been sentenced. Irvine testified that after the meeting, the petitioner informed defense counsel that he wished to enter a plea.

John Halstead, an assistant district public defender who was appointed to the petitioner's defense team, testified that upon contacting TDOC's legal department regarding their ability to transfer the petitioner, he learned that Tennessee had canceled its interstate compact contract with Illinois. Halstead stated he informed the petitioner of the cancellation prior to entry of the plea. The petitioner also requested incarceration in Morgan County, and defense counsel obtained a letter of recommendation from the district attorney. Halstead stated he also informed the petitioner that he could not guarantee incarceration in Morgan County.

Halstead testified he did not coerce the petitioner into entering the plea. Halstead informed the petitioner that he believed the petitioner would be convicted at trial and would likely receive the death penalty. Halstead stated "it was [the petitioner's] choice as to what to do."

## II. POST-CONVICTION COURT'S FINDINGS

In denying the petitioner's post-conviction relief petition, the post-conviction court accredited Halstead's testimony that he informed the petitioner prior to entry of the plea that he could not serve his sentence in Illinois. Regarding the petitioner's placement in a Morgan County facility, the court noted the guilty plea transcript reflected that a member of the defense team informed the trial court in the petitioner's presence that the state was only recommending placement and was not attempting to bind TDOC. The post-conviction court further noted that during the plea hearing, the trial court "made it very crystal clear" to the petitioner that TDOC would make the final determination regarding placement, notwithstanding the state's recommendation. Thus, the post-conviction court

found that neither out-of-state incarceration nor incarceration at Morgan County was a condition of the petitioner's plea.

The post-conviction court found the petitioner's guilty plea was not the result of coercion. The court noted the petitioner had declined to enter a plea agreement on a prior occasion and, therefore, knew he had a right to reject the plea agreement. The court further noted that during the plea hearing, the petitioner informed the trial court that he was voluntarily entering the plea. Regarding the meeting between the petitioner and his wife, the post-conviction court noted the petitioner agreed to meet with her and found that defense counsel's conduct in permitting the meeting was not improper.

## III.  STANDARD OF REVIEW

The post-conviction judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). Those findings of fact are afforded the weight of a jury verdict, and this court is bound by the findings unless the evidence in the record preponderates against those findings. Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003). This court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001).

## IV.  CONDITION OF PLEA AGREEMENT

The petitioner contends the state agreed to allow him to serve his sentence in either Illinois or Puerto Rico as a condition of his plea agreement. The petitioner maintains that this condition is impossible to fulfill, and as a result, the plea agreement is void.

Plea agreements are treated as contracts and are enforceable once the trial court accepts the agreement. State v. Howington, 907 S.W.2d 403, 407 (Tenn. 1995). As the United States Supreme Court has noted, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971).

Upon reviewing the record, we are unable to conclude incarceration in Illinois, Puerto Rico, or Morgan County was a condition of the petitioner's plea. Neither the guilty plea documents nor the transcript of the guilty plea hearing indicate that the state guaranteed incarceration in any of these jurisdictions.

Furthermore, the evidence indicates that prior to entering the plea agreement, the petitioner was aware that incarceration in any of these jurisdictions was not guaranteed. At the plea hearing, both defense counsel and the trial court stated that the district attorney only recommended to TDOC that the petitioner serve his sentence in Morgan County and that TDOC would determine placement. Most importantly, the post-conviction court accredited Halstead's testimony that he informed the petitioner that due to the absence of an interstate compact contract between Tennessee and Illinois, he could not be transferred to Illinois at that time. The evidence does not preponderate against the

findings of the post-conviction court. Accordingly, the petitioner is not entitled to relief on this issue.

## V. INVOLUNTARY GUILTY PLEA

The petitioner contends his plea was involuntary and the result of coercion from defense counsel and his wife. We disagree.

Due process demands that a guilty plea be entered voluntarily, knowingly, and understandingly. Boykin v. Alabama, 395 U.S. 238, 242-44, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). A guilty plea is not involuntary simply because the accused was faced with an election between a possible death sentence upon trial and a lesser sentence upon a guilty plea. Parham v. State, 885 S.W.2d 375, 381 (Tenn. Crim. App. 1994); *see* Brady v. United States, 397 U.S. 742, 751, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970).

In determining whether a guilty plea comports with due process, the court must assess whether it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). A defendant's testimony at a plea hearing that his plea is voluntary is a "formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977).

At the plea hearing, the petitioner informed the trial court that he did not receive any threats and was not pressured into entering the plea. The petitioner stated he was voluntarily entering the plea and had discussed his options with defense counsel. At the post-conviction relief hearing, Halstead testified he did not coerce the petitioner into pleading guilty and the petitioner chose to enter the plea. The petitioner knew he had the right to reject the plea agreement and proceed to trial. The petitioner knew he was facing the possibility of the death penalty and chose to avoid this possibility. *See* Parham, 885 S.W.2d at 381. The post-conviction court found the petitioner freely and voluntarily pled guilty to the offense and was not unlawfully coerced by his wife or counsel. The evidence does not preponderate against the post-conviction court's findings.

We affirm the judgment of the post-conviction court.

_____
JOE G. RILEY, JUDGE

-5-