IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 25, 2005

## GREGORY CHRISTOPHER FLEENOR v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Sullivan County**
**No. C46,705    R. Jerry Beck, Judge**

---

**No. E2004-00943-CCA-R3-PC - Filed June 16, 2005**

---

The petitioner, Gregory Christopher Fleenor, pled guilty in the Sullivan County Criminal Court to first degree felony murder and especially aggravated robbery, and the trial court sentenced him to concurrent sentences of life and fifteen years respectively. Subsequently, the petitioner filed a petition for post-conviction relief, alleging (1) that he received the ineffective assistance of trial counsel and (2) that his guilty pleas were not knowingly and voluntarily entered. After an evidentiary hearing, the post-conviction court dismissed the petition, and the petitioner now appeals. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Keith A. Hopson, Kingsport, Tennessee, for the appellant, Gregory Christopher Fleenor.

Paul G. Summers, Attorney General and Reporter; William G. Lamberth, II, Assistant Attorney General; and H. Greeley Wells, Jr., District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

This case relates to the petitioner's participation in the killing and robbery of John T. Bussell in August 2001. At the guilty plea hearing, the state gave the following factual account of the crimes: The eighty-one-year-old victim owned a bait shop and restaurant in Sullivan County. On August 21, 2001, the petitioner, his girlfriend, Steven Rollins, and Rollins' girlfriend went to the bait shop, intending to rob the victim. While the petitioner and his girlfriend waited in the car, Rollins and his girlfriend went into the bait shop. The petitioner heard a commotion and heard the victim pleading for his life. The petitioner got out of the car, walked to the bait shop door, and saw Rollins

bending over behind a cash register. The petitioner did not see the victim. Rollins and the petitioner left the bait shop and walked to the victim's camper. They stole items from the camper and left the scene. According to the petitioner's statement to police, Rollins told the petitioner that he stabbed the victim and cut the victim's throat when the victim reached for a gun. The petitioner also said that Rollins threatened to kill the petitioner if he went to the police. Pursuant to a plea agreement, the petitioner pled guilty on March 14, 2002, to first degree felony murder and especially aggravated robbery, a Class A felony.[1] The trial court sentenced him to concurrent sentences of life for the murder conviction and fifteen years for the especially aggravated robbery conviction.

At the post-conviction evidentiary hearing, the petitioner testified that he was charged with the crimes in October 2001 and that the state filed a notice of intent to seek the death penalty. The trial court appointed two attorneys to represent him, and the petitioner discussed his case with them. The attorneys told the petitioner that they filed motions in the case, including a motion for discovery. The attorneys gave the petitioner documents they received during discovery and reviewed the documents briefly with him. The petitioner stated that the sheriff's department recorded some of his telephone conversations while he was in jail and that he asked his attorneys to give him copies of the audiotapes. However, the petitioner stated that he never received the tapes and that his attorneys never told him what was on the tapes. When the petitioner decided to plead guilty, his attorneys told him that he would be making an <u>Alford</u> plea but that he would "still have some of [his] rights." However, they did not explain what an <u>Alford</u> plea was and did not tell him that he would lose his right to appeal his convictions. Before the petitioner decided to plead guilty, his attorneys sent him a letter explaining that they believed he would get the death penalty if he went to trial. The petitioner's attorneys also talked to his mother. The petitioner related that his attorneys told him about lesser included offenses but told him that lesser included offenses "would not apply" in his case. He said that if he had known that the trial court would have instructed the jury on lesser included offenses, he would not have pled guilty and would have gone to trial.

On cross-examination, the petitioner acknowledged that his codefendant, Steven Rollins, went to trial, was convicted, and received the death penalty. The state introduced into evidence the Request for Acceptance of Plea of Guilty Waiver of Rights form signed by the petitioner. The petitioner acknowledged that the form stipulates "this case is at an end." However, he stated that he only read part of the form and did not know he was giving up his right to a direct appeal. The petitioner acknowledged that at the guilty plea hearing, he told the trial court that he had read the form. He said, however, that he lied to the trial court because his attorneys told him to say, "Yes, Sir" when the trial court asked him questions during the guilty plea hearing. The petitioner also acknowledged that he met with his attorneys one week before the guilty plea hearing and told them he wanted to accept the state's plea offer. Regarding lesser included offenses, the petitioner acknowledged that his attorneys sent him a letter in which they stated that the trial court would

---

[1]Steven Rollins was convicted of first degree premeditated murder, felony murder, and especially aggravated robbery and was sentenced to death. This court affirmed the convictions. <u>See</u> <u>State v. Steven James Rollins</u>, No. E2003-01811-CCA-R3-DD, 2005 Tenn. Crim. App. LEXIS 373 (Knoxville, Apr. 21, 2005). Pursuant to Tennessee Code Annotated section 39-13-206(a)(1), his case is currently before our supreme court.

instruct the jury on lesser included offenses if the petitioner decided to go to trial. The petitioner also acknowledged that the trial court asked him at the guilty plea hearing if he was pleading guilty knowingly and voluntarily and that he responded, "Yes."

On redirect examination, the petitioner testified that the first time he saw the waiver of rights form was on the morning of the guilty plea hearing and that he did not read the entire form. He said that his attorneys told him the trial court would instruct the jury on lesser included offenses but that the jury would never convict him of a lesser included offense. He acknowledged that at the guilty plea hearing, the trial court advised him that if he pled not guilty, he would have the right to appeal his convictions.

Barbara Ann Smith, the petitioner's mother, testified that she and the petitioner had a close relationship and that the petitioner asked her to meet with his attorneys to discuss the state's plea offer. During the meeting, the petitioner's attorneys showed her gruesome photographs of the victim and one of the attorneys told her, "I don't think [the petitioner] wants you watching him getting a lethal injection on the table." After the meeting, she told the petitioner to accept the state's offer. She said that if she had known about lesser included offenses, she may have suggested to the petitioner that he go to trial. On cross-examination, Ms. Smith testified that the petitioner's attorneys told her they thought the petitioner would be convicted of first degree murder and would be sentenced to death.

One of the petitioner's trial attorneys testified that he had been practicing law since 1981 and primarily practiced criminal law. He and co-counsel filed sixty-six motions in the petitioner's case, including a discovery motion. The state turned over discovery material, including twelve audiotapes of the petitioner's telephone conversations recorded by the sheriff's department while the petitioner was in jail. Co-counsel reviewed the tapes, and both attorneys discussed the tapes with the petitioner. The petitioner's attorney testified that the tapes were not exculpatory, that the state was not going to use them against the petitioner at trial, and that the petitioner knew what was on the tapes. The attorneys told the petitioner that if he went to trial, the trial court would instruct the jury on lesser included offenses. However, counsel did not think that a jury would find the petitioner guilty of any lesser included offenses. At some point, the state made a plea offer to the petitioner. Counsel thought that a jury would convict the petitioner of first degree murder and sentence him to death because photographs of the victim showed "a very elderly man who had been butchered." Moreover, the petitioner's girlfriend was going to testify against him at trial.

The attorney testified that he told the petitioner he would lose his right to a direct appeal if he pled guilty. However, he also told the petitioner that the petitioner could appeal his sentences if the trial court sentenced him outside the guilty plea agreement or gave him an illegal sentence. He stated that he went over the state's plea offer and the waiver of rights form with the petitioner and that the petitioner understood the offer and the form. Counsel testified that at the time the attorneys met with the petitioner's mother, the state had not yet made a plea offer. During their meeting with the petitioner's mother, the petitioner's attorneys discussed the evidence against the petitioner and told her why they thought a plea agreement would be in the petitioner's best interests. They also

showed the petitioner's mother photographs of the victim and discussed possible punishments the petitioner would receive. The petitioner's attorney testified that because the petitioner did not stab the victim, he thought the jury likely would convict the petitioner of first degree murder and sentence him to life without the possibility of parole. However, he stated that the petitioner "could very well receive the death penalty."

On cross-examination, the petitioner's attorney testified that the petitioner was easy to work with and was cooperative. He and co-counsel discussed with the petitioner the questions that the trial court would ask the petitioner at the guilty plea hearing and the rights that the petitioner would be waiving. At some point, the attorney mailed a letter to the petitioner recommending that the petitioner accept the state's offer. The attorney enclosed a copy of the plea agreement and waiver of rights form with the letter. Regarding the audiotapes, the attorney testified that the petitioner never asked to listen to the tapes and that he would have allowed the petitioner to listen to the tapes if the petitioner had asked to do so.

In denying the petition for post-conviction relief, the post-conviction court expressly discredited the petitioner's testimony and accredited his trial attorney's testimony. The post-conviction court found that the petitioner was not pressured into pleading guilty and voluntarily entered his guilty pleas. The trial court also held that his attorneys discussed lesser included offenses with him and that the trial court advised him at the guilty plea hearing that he was giving up his right to appeal his convictions. Finally, the trial court concluded that the petitioner's attorneys "did an excellent job" in representing him.

The petitioner claims that he received the ineffective assistance of trial counsel because his attorneys failed to provide him with the audiotapes of his telephone conversations, failed to tell him that lesser included offenses would be instructed to the jury if he went to trial, and failed to inform him that he would lose his right to a direct appeal if he pled guilty. In addition, he contends that his guilty pleas were not knowingly and voluntarily entered because his attorneys used his mother and the threat of the death penalty to coerce him into pleading guilty. Finally, he claims that his guilty pleas were not knowing and voluntary because the trial court failed to tell him during the guilty plea hearing that the judgments of conviction would be used to enhance punishments he received for any subsequent convictions and failed to ask him if his willingness to plead guilty resulted from prior discussions between the district attorney and the petitioner or his attorney as required by Rule 11(d), Tenn. R. Crim. P.

## II. Analysis

In a post-conviction proceeding, the petitioner bears the burden of proving the grounds raised in the petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual

questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

## A. Ineffective Assistance of Counsel

On appeal, a claim of ineffective assistance of counsel presents a mixed question of law and fact subject to de novo review. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). As such, the post-conviction court's findings of fact are entitled to a presumption of correctness unless the evidence preponderates against those findings. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, a post-conviction court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are subject to a purely de novo review with no presumption of correctness. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)).

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Id. at 370.

To establish constitutionally deficient performance, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88, 104 S. Ct. at 2064; Burns, 6 S.W.3d at 462. Specifically, the petitioner must show that counsel's performance was not within "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). On appeal, this court will neither second guess the tactical and strategic decisions of defense counsel, nor measure the representation by "20-20 hindsight." Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; see also Dean v. State, 59 S.W.3d 663, 667 (Tenn. 2001).

In this case, the petitioner claims that he received the ineffective assistance of counsel because his trial attorneys failed to provide him with audiotapes of his telephone conversations recorded while he was in jail, failed to tell him that lesser included offenses would be instructed to the jury if he went to trial, and failed to inform him that he would lose his right to a direct appeal if he pled guilty. Regarding the audiotaped telephone conversations, the petitioner's trial attorney testified at the post-conviction hearing that the tapes were not exculpatory, that the State was not going to use the tapes against the petitioner at trial, that counsel discussed the tapes with the petitioner, and that the petitioner knew what was on the tapes. The tapes have not been included in the record on appeal. The trial court accredited the petitioner's testimony over that of the petitioner. The petitioner has failed to show that his attorneys rendered deficient performance for failing to give him the tapes or that he was prejudiced by any deficiency.

Regarding lesser included offenses, the petitioner admitted at the evidentiary hearing that his attorneys told him lesser included offenses would be charged to the jury if he went to trial. Moreover, the trial court noted that it informed the petitioner at the guilty plea hearing that the jury would be instructed on lesser included offenses. Our review of the guilty plea hearing transcript shows that the trial court informed the petitioner that the jury would be instructed on lesser included offenses of first degree murder and especially aggravated robbery if he went to trial. As to the petitioner's claim that his attorneys failed to inform him that he would lose his right to a direct appeal if he pled guilty, the petitioner's attorney testified that he told the petitioner he would lose his right to a direct appeal. In its order denying post-conviction relief, the trial court noted that the petitioner signed a guilty plea agreement and waiver of rights form. The form provides that by pleading guilty "there will not be a trial; and this case is at an end, other than the imposing of the above sentence on me." Although the petitioner testified at the post-conviction hearing that he did not read the entire form and that his attorneys never told him that he would lose his right to a direct appeal, the trial court accredited the petitioner's attorney, and the record does not preponderate against the trial court's conclusion that the petitioner knew he was waiving his right to a direct appeal by pleading guilty.

B. Knowing and Voluntary Guilty Pleas

In determining whether a petitioner's guilty plea was knowing and voluntary, this court must look at the totality of the circumstances. State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). "This court is bound by the post-conviction court's findings unless the evidence preponderates otherwise." Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). Therefore, in order to comply with constitutional requirements, a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). In order to ensure that a defendant understands the constitutional rights being

-6-

relinquished, the trial court must advise the defendant of the consequences of a guilty plea. <u>Boykin</u>, 395 U.S. at 243-44, 89 S. Ct. at 1712.

In <u>State v. Mackey</u>, 553 S.W.2d 337, 341 (Tenn. 1977), superseded on other grounds by Tenn. R. Crim. App. 37(b) and Tenn. R. App. P. 3(b), our supreme court set out the procedure trial courts should follow when accepting a guilty plea. Prior to accepting the guilty plea, the trial court must advise the defendant of the consequences of a guilty plea and determine whether the defendant understands those consequences. <u>See</u> <u>id.</u>; <u>see also</u> Tenn. R. Crim. P. 11(c). A verbatim record of the guilty plea must be made and must include, without limitation, "(a) the court's advice to the defendant, (b) the inquiry into the voluntariness of the plea including any plea agreement and into the defendant's understanding of the consequences of his entering a plea of guilty, and (c) the inquiry into the accuracy of a guilty plea." <u>Mackey</u>, 553 S.W.2d at 341.

In determining whether the petitioner's guilty plea was knowing and voluntary, this court looks to the following factors:

> The relative intelligence of the [petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

<u>Blankenship v. State</u>, 858 S.W.2d 897, 904 (Tenn. 1993).

The petitioner claims that his guilty pleas were not knowingly and voluntarily entered because his attorneys used his mother and the threat of the death penalty to coerce him into pleading guilty. The post-conviction court held that the petitioner voluntarily entered his pleas. We agree. According to the guilty plea hearing transcript, the trial court specifically asked the petitioner if his pleas were voluntary, and the petitioner answered, "Yes, your honor." Although the petitioner claims that his attorneys used the threat of the death penalty to coerce him into pleading guilty, we note that if an attorney believes it to be in the appellant's best interest to plead guilty in order to avoid the death penalty, the attorney should advise the appellant to do so. <u>Parham v. State,</u> 885 S.W.2d 375, 381 (Tenn. Crim. App. 1994). In this case, the petitioner's trial attorney testified that he thought the petitioner would be convicted of first degree murder and "could very well receive the death penalty." Although the petitioner contends that he was coerced into pleading guilty, given the totality of the circumstances, the petitioner has failed to show that his guilty pleas were not knowingly, intelligently, and voluntarily entered.

The petitioner also claims for the first time in this appeal that his guilty pleas were not knowingly and voluntarily entered because the trial court failed to tell him during the guilty plea hearing that the judgments of conviction would be used to enhance punishments he received for any

subsequent convictions. See State v. McClintock, 732 S.W.2d 268, 273 (Tenn. 1987) (providing that when accepting a guilty plea, a trial court "must make it clear to the defendant that the resulting judgment of conviction may be used in a subsequent proceeding to enhance the punishment for subsequent offenses"). In addition, he contends that the trial court failed to ask him if his willingness to plead guilty resulted from prior discussions between the district attorney and the petitioner or his attorney as required by Rule 11(d), Tenn. R. Crim. P. However, we note that "[t]o the extent the petitioner's claim is based upon the requirements for the taking of guilty pleas imposed by Mackey and Rule 11, Tenn. R. Crim. P., but not related to constitutional rights, it is not cognizable in a suit for post-conviction relief." Matthew Melton Jackson v. State, No. M2004-01342-CCA-R3-PC, 2005 Tenn Crim. App. LEXIS 481, at *31 (Nashville, May 18, 2005).

In any event, regarding the petitioner's claim that the trial court failed to tell him that the judgments of conviction would be used to enhance punishments for subsequent crimes, our review of the guilty plea hearing transcript shows that the trial court stated the following:

> Now, do you understand that if I accept your pleas of guilty here today, there will be resulting records of conviction, and if in the future you should be convicted of some new criminal offense, the Sentencing Judge will give you a longer sentence because of these pleas of guilty here today? Do you fully understand that?

Thus, there is no merit to the petitioner's claim that the trial court failed to inform him that his guilty pleas could be used to enhance any punishments for subsequent convictions.

Moreover, as to his claim that the trial court failed to ask him if his willingness to plead guilty resulted from prior discussions between the district attorney and the petitioner or his attorney as required by Rule 11(d), Tenn. R. Crim. P., the petitioner has made no showing that the trial court's failure resulted in his pleas being unknowing and involuntary. To the contrary, our review of the guilty plea hearing transcript shows that trial court substantially complied with Rule 11, thoroughly questioned the petitioner about his guilty pleas, and asked him several times if he was pleading guilty voluntarily. See Parham, 885 S.W.2d at 381 (providing that a trial court "must ask a sufficient number of questions to ensure that the accused is voluntarily entering the guilty plea"). The petitioner has failed to demonstrate that he did not plead guilty voluntarily.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE

-8-